IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TAMMY SIMPSON, Individually and
MARVIN CHARLEY, Individually, Husband and Wife,
And TAMMY SIMPSON, as Guardian and Next
Friend of P.S. and B.C., Minor children,

    S    Plaintiffs,

vs.

                                   No. 1-18-cv-01169-KWR-LF

THE UNITED STATES OF AMERICA,

    Defendant.

### PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE COLLATERAL SOURCE EVIDENCE

Plaintiffs, by and through undersigned counsel of record, hereby submits *Plaintiffs' Motion in Limine to Exclude Collateral Source Evidence* asking the Court to prohibit Defendant from presenting any evidence that support reducing damages from any state or federal sources which Plaintiff Tammy Simpson ["Simpson"] could be eligible for her past, present and future medical and nonmedical care because such evidence is prohibited under New Mexico's collateral source rule. Plaintiffs seeks to exclude any and all evidence of collateral source payments on grounds that such evidence is irrelevant, inadmissible, and substantially more prejudicial than probative.

Given the nature of this motion and Plaintiffs' companion motion filed simultaneously with the instant motion opposing Defendant's insistence on an irrevocable reversionary trust for an award of damages which has numerous provisions of collateral source exceptions, approval of opposing counsel was not sought.

1

## I.     INTRODUCTION

This motion concerns damages sought on behalf of Simpson, an incapacitated adult. Plaintiffs have filed a complaint [Doc. 1] arising under the Federal Tort Claims Act alleging that Simpson suffered permanent and irreparable physical and emotional damages as a result of the medical negligence of the Defendant USA in the operation of the Northern Navajo Medical Center, Shiprock, New Mexico. A dispute may arise between the parties as damages for which the Defendant may be liable. Specifically, the Defendant may assert the position that any damages for the cost of Simpson's past, present and future medical and non-medical care should be reduced or "off set" by the amount that will be paid by any government funded programs.[1] As more fully explained below, this position is not only incorrect, it is in contravention with well-settled law and New Mexico law. Evidence of collateral source payments is generally inadmissible. See, e.g., *Trujillo v. Chavez*, 417 P.2d 893, 897 (N.M. 1966); *Martinez v. Knowlton*, 536 P.2d 1098, 1099 (N.M. App. 1975). Moreover, the Defendant is the alleged tortfeasor and is prohibited from arguing that whatever the Court awards to Plaintiffs, and that it is further prohibited to argue an offset based on its status as a federal tortfeasor arising under New Mexico law and the Federal Tort Claims Act. Specifically, the "law of the state" controls the substantive law application for an FTCA case and therefore the law of New Mexico controls. 28 U.S.C. §1346(b). In short, Defendant and its federal employees are the tortfeasors proximately causing Plaintiffs' damages and should be required to pay 100% of Plaintiffs' damages.

Plaintiffs timely filed their Expert Witness Disclosures on January 21, 2020 per the Court's Scheduling Order. [Doc. 50]. Defendant has not disclosed any expert life care planner or economist to present any counter damages testimony to the Court. The time for such disclosures has passed and therefore Plaintiffs' experts, Nancy Cutter, M.D. (Physiatrist), Loretta Lukens (M.N., R.N.,

C.R.R.N.), Rex Jung, Ph.D. (neuropsychologist), and M. Brian McDonald, Ph.D. (economist) are the only witnesses to offer damages testimony to the Court.

Plaintiffs respectfully request, through this motion in limine, that the Court prohibit the Defendant from offering such evidence at trial, as well as prohibit the Defendant from arguing that such benefits should reduce the Defendant's lump sum payment for damages for Simpson's future costs as identified in the life care plan by Dr. Cutter and Loretta Lukens and valued in present value dollars by the economic analysis of Dr. Brian McDonald.

Setting aside the fact that Simpson is legally entitled to the present cash value of her future expenses, s*ee* UJI 13-1805 NMRA (stating plaintiff is entitled to "the present cash value of such nonmedical expenses reasonably certain to be required in the future"), any collateral source evidence should be excluded because payments from government programs are considered to come from a "collateral source." Since payments from a collateral source may not be set off against future medical and nonmedical expenses under New Mexico law, evidence of such payments would be irrelevant. The Court, therefore, should grant the plaintiffs' motion in limine.

## II. POINTS AND AUTHORITIES

"Under New Mexico law, compensation received from a collateral source does not operate to reduce damages recoverable from a wrongdoer." *See Pipkins v. TA Operating Corp.*, 466 F. Supp. 2d 1255, 1258 (D.N.M. 2006). Thus, a plaintiff may seek full recovery from "the responsible defendant, even though he may have recovered part of his losses from a collateral source." *Green v. Denver & Rio Grande W. R.R. Co.*, 59 F.3d 1029, 1032 (10th Cir. 1995); *see also Felts v. Bd. of Cty. Commissioners of Valencia Cty.*, No. 13-CV-1094-MCA/SCY, 2017 WL 3267742, at *3 (D.N.M. July 31, 2017) (relying on *Green v. Denver* for its "conclusion that the Medicaid funds used to pay Plaintiff's medical bills are a collateral source.") While in general a double recovery is not permitted, "public policy favors giving the plaintiff a double recovery rather than allowing

a wrongdoer to enjoy reduced liability simply because the plaintiff received compensation from an independent source." *FDIC v. United Pac. Ins. Co.*, 20 F.3d 1070, 1083 (10th Cir.1994); *see also Sunnyland Farms, Inc. v. Cent. N.M. Elec. Co-op., Inc.*, 301 P.3d 387, 401 (N.M. 2013) ("the contribution of a collateral source must operate to benefit the plaintiff rather than the defendant."); *EEOC v. Roswell Radio, Inc.*, CIV-06-253 JB/LAM (Browning, J.).

### III. ARGUMENT

A "collateral source" is a source of funds that is "distinct from the funds of the defendant." *Berg v. Defendants*, 806 F.2d 978, 984 (10th Cir. 1986). Based on this bedrock law, the Defendant would have this Court believe that public benefits such as Social Security Disability, Medicaid and Medicare are not excluded under the collateral source rule because the source of funds for those programs is the government itself, and not a source distinct from or "collateral" to the Defendant. While this argument has superficial appeal, it has been rejected repeatedly by both state and circuit courts because it is based on a flawed understanding of how government programs are funded. Moreover, under the FTCA, Defendant is liable to Plaintiffs as if it were a private citizen, 28 U.S.C. §1346(b), thereby further insulating Plaintiffs from the Defendant claiming that the source of any award is federal funds. In short, the source is irrelevant to Defendant claiming any offset based on payment from federal funds.

The Court is empowered to determine what is in the best interests of Simpson and will not impose undue and onerous obligations on her and her family. *McConel Aviation, Inc. v. Commercial Aviation Insurance Company*, 110 N.M. 687, 799 P.2d 133 (1990); *Selgado v. Commercial Warehouse, Co.*, 86 N.M. 633, 526 P.2d 430 (Ct. App. 1974); *Martinez v. Knowlton*, 88 N.M. 42 (1975); *Jojala v. Baldridge Lumber Co.*, 95 N.M. 761 (1981)(the "collateral source" doctrine is general law of damages under which wrongdoer may not set up in mitigation or

reduction of damages that party seeking damages has been wholly or partially compensated by insurance, if such insurance was not procured by wrongdoer).

Similarly, in *McConal*, the New Mexico Supreme Court observed that " '[u]sually the collateral contribution necessarily benefits either the injured person or the wrongdoer. Whether it is a gift or the product of a contract of employment or of insurance, the purposes of the parties to it are obviously better served and the interests of society are likely to be better served if the injured person is benefitted than if the wrongdoer is benefitted.' " 799 P.2d at 136 (quoting *Rose*, 335 F. Supp. at 1236); cited in *Pipkins v. TA Operating Corp., et.al.* CV 05-1200 WPL/RLP (Lynch, J.)(page 10). Moreover, the New Mexico Supreme Court's decision in *McConal* affirmed the plaintiff-oriented approach underlying the collateral source rule and indicated that under New Mexico law, any windfall arising from the collateral source rule should benefit the plaintiff, and not the tortfeasor. 799 P.2d at 136 (recognizing that "if a collateral resource is to benefit a party, it should better benefit the injured party than the wrongdoer"); *see also Lopez*, 129 P.3d at 492 ("In many respects, the rule 'is punitive' because it 'allows a plaintiff to fully recover from a defendant for an injury even when the plaintiff has recovered from a source other than the defendant for the same injury.'" (quoting *Norwest Bank (Minnesota), N.A. v. Symington*, 3 P.3d 1101, 1109 (Ariz. Ct. App. 2000). Moreover, New Mexico case law, along with the policy rationale underlying New Mexico's adoption of the collateral source rule, indicates that Medicare write offs would be treated the same as any other benefit a plaintiff may receive from a collateral source. *Pipkins v. TA Operating Corp., et.al.* CV 05-1200 WPL/RLP (page 11).

**A.     In this medical malpractice claim, Medicaid and Medicare benefits are a collateral source, and Defendant is not entitled to an offset or reduction to any lump sum damages payment for Simpson's future care.**

Importantly, "one of the reasons commonly given in support of the collateral source rule is that the rule preserves subrogation rights of any insurer who paid benefits to the plaintiff." Dan B. Dobbs, Law of Remedies 375 (2d ed. 1993). It follows then, that because the federal government has no right of subrogation, (i.e. reimbursement), the judiciary does not consider the federal government as the source of funds and does not allow them to be recouped.

Indeed, it is well recognized that "the collateral source rule protects Medicaid payments … and the federal government is not entitled to a credit or offset against [a minor plaintiff's] damages based on Medicaid's payment of the child's medical expenses." *See Simms v. Defendants*, 839 F.3d 364, 369 (4th Cir. 2016). Recently, the District of New Mexico found that the Defendant, Valencia County, could not offset Medicaid payments from the damages award despite its having contributed to the state Medicaid fund, because the plaintiff had also contributed to the fund by paying taxes on his purchases in New Mexico. *See Felts v. Bd. of Cty. Commissioners of Valencia Cty.*, No. 13-CV-1094-MCA/SCY, 2017 WL 3267742, at *4 (D.N.M. July 31, 2017).

As recognized repeatedly, the general rule is that Medicaid evidence is excluded from trial under the collateral source rule because it is funded by taxes that are paid by all citizens. *See Cates v. Wilson,* 321 N.C. 1, 6, 361 S.E.2d 734, 737–38 (1987) ("Medicaid is a form of insurance *paid for by taxes collected from society in general*.")(emphasis added); *Bennett v. Haley*, 132 Ga. App. 512, 524, 208 S.E.2d 302, 311 (1974) ("The Medicaid program is social legislation; it is the equivalent of health insurance for the needy; and, just as any other insurance form, it is an acceptable collateral source.") *Loncar v. Gray*, 28 P.3d 928, 933 (Alaska 2001) ("The collateral source rule 'exclud[es] evidence of other compensation on the theory that such evidence would

affect the jury's judgment unfavorably to the plaintiff on the issues of liability and damages.' Under this rule, the superior court appropriately excluded Medicaid evidence at the beginning of the trial."); *Wills v. Foster,* 229 Ill.2d 393, 418–19, 323-26, 892 N.E.2d 1018, 1033 (2008) (where plaintiff was a recipient of Medicaid and Medicare, "the fact that the collateral source was the government instead of a private insurance company is a distinction without a difference. All plaintiffs are entitled to seek to recover the full reasonable value of their medical expenses"); *Bynum v. Magno,* 106 Hawai'i 81, 89, 101 P.3d 1149, 1157 (2004) ("Inasmuch as Medicare/Medicaid are social legislation programs, we conclude that the collateral source rule applies to prevent the reduction of a plaintiff's award of damages to the discounted amount paid by Medicare/Medicaid"); *Kenney v. Liston*, 233 W. Va. 620, 630, 760 S.E.2d 434, 444 (2014) (noting that Medicaid is a collateral source that is inadmissible to reduce a defendant's liability for damages.)

For all of these reasons, Medicaid payments, like Medicare payments, may not be used to offset or reduce Defendant's liability damages for the cost of Simpson's future care. Defendant should be precluded from introducing such evidence.

## IV. CONCLUSION

WHEREFORE, Plaintiffs respectfully request that the Court exclude all evidence of public benefits and/or collateral sources to which Simpson may be entitled as part of her past, present, and future care because New Mexico's collateral source rule prohibits Defendant from reducing its future care damages based on those collateral benefits to Plaintiffs.

        Respectfully submitted,

        BARUDIN LAW FIRM

        */s/ Theodore W. Barudin*
        Theodore W. Barudin
        7900 Menaul NE
        Albuquerque, NM 87110
        Phone: 505-332-1800
        Fax: 505-271-1888
        tbarudin@barudinlaw.com

        BENCOE & LACOUR, PC
        Lori Bencoe
        Cherie LaCour
        9201 Montgomery Blvd. NE # 404
        Albuquerque NM 87111
        (505) 247-8800
        lori@bencoelaw.com
        cherie@bencoelaw.com

        KAPLAN & LUKOWSKI, LLP
        Ronald Ivan Kaplan
        333 Sandy Springs Circle, Suite 200
        Atlanta, GA 30328
        Phone: 404-845-0012
        Fax: 404-845-0028
        rik@kaplanlegal.com
        *Attorneys for Plaintiffs*

**CERTIFICATION OF FILING**

This is to certify that on September 8, 2020, Plaintiffs filed this ***Motion in Limine to Exclude Collateral Source Evidence*** via CM/ECF and served said *Motion* via electronic filing and U.S. Mail to:

Roberto D. Ortega
United States Attorney's Office
District of New Mexico
P.O. Box 607
Albuquerque, NM  87103
(505) 346-7282

*/s/ Theodore W. Barudin*
Theodore W. Barudin