**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

TAMMY SIMPSON, Individually and
MARVIN CHARLEY, Individually, Husband and Wife,
And TAMMY SIMPSON, as Guardian and Next
Friend of P.S. and B.C., Minor children,

Plaintiffs,

vs. No. 1-18-cv-01169-KWR-LF

THE UNITED STATES OF AMERICA,

Defendant.

**PLAINTIFFS' MOTION IN LIMINE IN OPPOSITION TO THE ESTABLISHMENT OF A REVERSIONARY TRUST**

Plaintiffs, by and through their counsel of record, hereby submit the following *Motion in Limine In Opposition to the Establishment of a Reversionary Trust* in opposition to Defendant United States of America's[1] proposal to place any funds resulting from Plaintiff Simpson's anticipated recovery in this action in a federal reversionary trust. For the reasons set forth below, a reversionary trust created from funds recovered on behalf of Plaintiffs by settlement or judgment would not be in Plaintiff Simpson's best interests. Thus, the Court should reject Defendant's proposal or demand to create such a trust.

**ARGUMENT**

**I. THE IMPOSITION OF A REVERSIONARY TRUST SHOULD BE REJECTED**

[1] Defendant United States of America will be referred to herein as "Defendant". Counsel for Defendant has informed Plaintiffs' counsel that any settlement will have to include a irrevocable reversionary trust such as the one attached hereto.

Although the Court has discretion to create a reversionary trust in FTCA actions similar to the one proposed by Defendant (*see, e.g., Cibula v. United States,* 664 F.3d 428, 433 (4th Cir. 2012); *Dutra v. United States,* 478 F.3d 1090, 1092 (9th Cir. 2007)), it should not exercise such discretion here because it is not in Plaintiff Tammy Simpson's best interests. *Hull v. United States,* 53 F.3d 1125, 1128 (10th Cir. 1995) (requiring the district court to focus only on what is in the plaintiff's best interest). As the Court held in *Simms v. United States*, 2017 U.S. Dist. LEXIS 122184 (S.D.W.V. Aug. 3, 2017) (on remand), a case involving similar facts and state laws regarding damages,[2] a *forced* creation of a reversionary trust is not "an appropriate exercise of [the court's] discretion."

Because this case arises under the FTCA, the law of New Mexico—the state where Northern Navajo Medical Center's [hereinafter "NNMC"] negligent acts took place—governs. *See* 28 U.S.C. § 1346(b)(1); *Simms v. United States,* 839 F. 3d 364, 367 (4th Cir. 2016); *Federal Express Corp. v. United States,* 228 F. Supp. 2d 1267, 1269 (D.N.M. 2002). *See also* 28 U.S.C. § 2674 (providing that "[t]he United States shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances"). Under New Mexico law, a plaintiff who obtains a medical malpractice award is entitled to damages that include future medical care and related benefits. NMSA §§ 41-5-7(B) & (C). In this case, Plaintiffs have obtained expert opinions

---

[2] In *Simms*, following a bench trial, the district court awarded the plaintiff, in a wrongful birth case, "a total of $12,222,743 in damages, distributed as follows: (1) $2,722,447 for past billed medical expenses, (2) $8,683,196 for future medical expenses—the present value of the projected future medical costs for C.J.'s care over a twenty-one-year life expectancy, (3) $175,526 for lost income, and (4) $641,544 in noneconomic damages." *Simms,* 839 F.3d at 367.

confirming that, as a result of Defendant's gross medical negligence, Plaintiff Simpson's future medical care and related benefits could amount to millions of dollars. As a result, Defendant proposes a reversionary trust, which will provide that, in the event of Ms. Simpson's death, any funds remaining in the trust will revert back to the government and not to Tammy Simpson's estate.

According to Defendant, the reversionary trust will be administered by an out-of-state federal bureaucrat or independent contractor (*i.e.*, Medi-Bill, Inc.)—named an "Administrator" in the sample Irrevocable Reversionary Inter Vivos Grantor Medical Care Trust provided by Defendant ("sample Reversionary Trust"), a copy of which is attached hereto as Exhibit 1 to Attorney Dan Pick's Affidavit—who will determine whether to release funds from the trust for Ms. Simpson's medical expenses on an "as needed" basis. The Government's contracted Administrator is in the unnatural position of protecting its client's funds rather than protecting Ms. Simpson's interests, which is of paramount importance, and creates a conflict of interest. The appointment and function of an out-of-state Administrator is completely unnecessary and will be detrimental to Plaintiff Simpson.

Trusts managed by trust companies, like Zia Trust for example, are subject to New Mexico law and court order. The trust company submits annual accounting reports to the beneficiaries and their legal guardian(s) detailing the trust's income-producing activities and expenditures, and also responds to audits pursuant to state and federal law. In this case, because the trust will benefit a an adult who has suffered the permanency of major stroke, the trust's protection and management will require compliance not only with the terms of the trust, case law, and New Mexico's Uniform Trust Code, NMSA 1978, § 46A-1-101, *et seq*. Further, a trust in this case will be created expressly for Ms. Simpson's benefit, and will require some flexibility because her needs and medical conditions will undoubtedly change as she ages.

The better-written trusts (*not* like the one Defendant proposes) recognize, acknowledge, and account for that flexibility with the overriding consideration being what is in the best interest of the trust beneficiary. The trustee will frequently call upon qualified medical and specialized professionals to assist in the evaluation of the beneficiary's medical needs, and to determine the most economical approach that balances the needs of the trust beneficiary and the preservation of funds. In addition, the trustee will also assess what financial support is needed for medical services provided by family members, who often provide the superior care with a better outcome to the injured person than that provided by a more expensive commercial source. When family members are part of the care team, they may be in the best position to provide day-to-day input to the trust officers regarding the beneficiary's needs and condition. Importantly, the Court should consider that family assistance in providing and monitoring care often results in a loss of income to the family, which may require compensation to the family member for services in the best interests of the injured parent. Again, such evaluation and decisions cannot be made remotely and should, instead, by made by local trust officers who can accurately evaluate and decide what services are necessary.

The sample Reversionary Trust proposed by Defendant adds an extra tier of approval and scrutiny by an out of state Administrator, which will cause delay in expenditures for Plaintiff Simpson's much-needed medical care. As set forth in the accompanying Declaration of Dan E. Pick, attached as Exhibit 1 hereto ("Pick Dec."), the sample Reversionary Trust is not in Plaintiff Simpson's best interests because (i) the proposed reversionary trust does not provide for the changing needs and circumstances of Plaintiff Simpson, and (ii) the "administrator" does not have discretionary powers to promptly make decisions as future changes in her condition and needs evolve. Pick Dec., ¶ 6. Further, a trust should be subject to court supervision and accountability

that is readily accessible if a dispute arises as to the needs of the permanently impaired child. The trust and its administration as proposed by the Government will not be subject to the Court's jurisdiction upon dismissal, and any action challenging the administration of the Reversionary Trust or disbursement of funds would require a suit filed in the U.S. Court of Claims for breach of contract, resulting in unnecessary and prolonged delays in releasing funds for much-needed medical care. *See Gonzales v. United States*, 2017 U.S. Dist. LEXIS 42714 (S.D. Ca. 2017) (district court holding that it did not have subject matter jurisdiction to enforce a reversionary trust and the plaintiff's claim would be for breach of contract that would need to be brought in the Federal Court of Claims). On the other hand, a New Mexico-administered trust would be subject to the jurisdiction of New Mexico state courts and governed by the laws of New Mexico.

Additionally, according to Mr. Pick, the reversionary trust proposed by the Government has the following deficiencies: (a) the standards for distribution (called Allowable Benefits) are far too restrictive; (b) the documentation requirements for reimbursement/distributions are too cumbersome; (c) the reversion provision gives the "Administrator" an incentive to disallow proposed distributions; (d) the Administrator does not owe fiduciary duties to the beneficiary and is not otherwise accountable to anyone; (e) the Trustee has no distribution authority; (f) and the concept of an Administrator has not been defined by statute and has no provisions for duties, standard of practice, liability for any abuse of power or any of the other protections afforded by statutes and a body of law that control the conduct and responsibilities of a trustee such as the New Mexico Bank & Trust. Pick Dec., ¶ 8.

First, these so-called "administrators" are not subject to any provision of the New Mexico Uniform Probate Code, NMSA 1978, § 45-7-501, *et seq*., so it is not clear what their fiduciary duties are to the beneficiary. Second, often the "administrator" of a Department of Justice

reversionary trust provides little assistance in providing for the trust beneficiary's much needed medical care, and acts to the beneficiary's detriment. For example, these administrators insist that collateral sources be pursued *before* a needed expenditure can be made, which causes unduly delay in needed treatment and is an action adverse to the best interests of the impaired beneficiary. Exhibit 1, ¶¶6. Third, a New Mexico bank trust department with experience in managing and overseeing trust funds can function more adequately than an out-of-state "Administrator," especially given the annual accounting requirements imposed by New Mexico law. ¶ 4.

Other reasons justify the management of a trust by a New Mexico-based trust company rather than by an out-of-state "Administrator" pursuant to the terms of a federal reversionary trust. First, funds awarded for future medical care subject to a reversionary provision (as proposed by Defendant) should be more liberally distributed. If the United States had a patient/victim compensation fund, there would be no limit on liability for payment of medical needs and services on an incurred basis. Second, a reversionary trust should provide for compensation to family members who often provide better medical care to the beneficiary. If this was the case, the family would not be burdened by having to forego employment as a result of providing care, overseeing medical services, scheduling and traveling to appointments, meeting with providers and trust officers, etc. Thus, under no scenario can the imposition of a reversionary trust be in Plaintiff Simpson's best interests.

A review of the sample Reversionary Trust reflects the deficiencies in trust management and administration that are contrary to Plaintiff Simpson's best interests and will impose undue and onerous obligations on her and her family. The following examples highlight these concerns:

- In Article I – Establishment of the Trust, Defendant relies on 28 U.S.C. § 2671 as authority for the creation of the trust. However, that section pertains only to the FTCA. Nowhere in the sample Reversionary Trust is there a citation to a federal rule or statute permitting the establishment of a reversionary trust document.

- In Article IV – Appointment of Trustee and Administrator, Defendant proposes that Medi-Bill, Inc. be the "administrator." Administrators are generally appointed to administer an estate when a decedent dies intestate and have no role in managing trust assets. The inclusion of Medi-Bill, Inc. is to effectively usurp the role of the trustee (*i.e.,* New Mexico Bank and Trust), which should not be permitted.

  According to Medi-Bill, Inc.'s website, https://medibill.net, Medi-Bill is located in Walnut Creek, California. Medi-Bill has also been a defendant in various lawsuits brought by settling FTCA plaintiffs for mismanagement, breach of fiduciary duty in administering a reversionary trust, and/or breach of contract. *See, e.g., Land v. United States, et al.*, Case No. 3:15-cv-03164 (filed May 21, 2015, C.D. Ill.); *Culbertson v. United States, et al.*, Case No. 4:15-cv-00067 (filed Feb. 4, 2005, S.D. Iowa).

- Article VI also lists Medi-Bill's duties, which include the "[e]xclusive duty to receive and review requests for payment of allowable benefits" and the duty to receive and review requests for payment of allowable benefits. In fact, this Article **imposes a duty *on the medical provider*** to show, in writing, that the medical need is **not subject to payment by another source**. This provision, found at Article VI, Section B(3), states as follows:

  > The written statement must specifically indicate whether the charges for the goods or services have been or will be submitted to any source of benefits other than the Trust, whether the portion of the charges has been or will be paid by any other source of benefits, the amount of any payment received, the balance due, and the identity (including name, address, and telephone number) of the other source of payments.

- The list of exclusions set forth in Article VI, Section C(3) are particularly troublesome given the fact that Plaintiff Simpson is a permanently impaired stroke victim and will face a lifetime of difficulty due to Defendant's negligence. This Section excludes reimbursement for dental care; expenses relating to in-home attendant care; rehabilitative, physical speech, occupational therapy and physical education, educational and training services; "[c]ounseling of any type"; and transportation or travel expenses "of any type for any purpose."

- Medi-Bill will look first to collateral sources for payments, which will undoubtedly prolong the approval process. Exhibit A, Article VI, Section D. Only if Medi-Bill—not the Trustee—determines that there are no alternative or collateral sources of benefits will it then direct the Trustee to pay the disputed amount. *Id.*, Section E.

- Article VII – Duty of Trustee severely limits the rights and obligations of the Trustee. The Trustee cannot pay allowable benefits without the Administrator's express approval (*id.*, Section C).

- Even though certain expenses, such as in-home attendant care, are itemized exclusions, Article IX, Section B nevertheless permits the Administrator, presumably at its discretion, to authorize such benefits. However, if a relative provides such care (in this case, the care will be provided by Plaintiff Simpson's husband, Melvin Charley, the allowable benefit is only the "hourly rate of pay equal to the median hourly rate of pay of the DOL Bureau of Statistics for the metropolitan or nonmetropolitan area where Beneficiary is residing." This provision fails to recognize that N.E.D.'s mother, Plaintiff Dominique Billy, would only be entitled to a low hourly wage despite the fact that she has terminated her salaried employment in order to take care of N.E.D. Ms. Billy is entitled to past, present, and future payments comparable to a trained professional in the daily care she has administered from the date of her daughter's injury and for the duration of her care of N.E.D.

- The Administrator retains the right to "make arrangements with" an out-of-state prescription service, such as Pharmacy Management, Inc. in Tampa, Florida, for "advance deposits of drugs and services." Article IX, Section B(5). Plaintiffs should not have to rely on an out-of-state prescription management service in order to obtain much-needed drugs and services.

Moreover, by insisting on a reversionary trust in lieu of a lump-sum award of future medical damages, Defendant is requesting this Court to consider the fact that Plaintiffs might receive a "windfall" upon her untimely death unless the governments retains a reversionary interest. However, as the Tenth Circuit held in *Hull v. United States*, 971 F.2d 1499 (10th Cir. 1992), such consideration is improper. "In determining whether such a trust is appropriate . . ., the court should consider what form or structure of damages best serves [Plaintiff Simpson's] interests *from her perspective only*." *Id.* at 1505 (emphasis added). *See also Hill v. United States*, 81 F.3d 118, 121 (10th Cir. 1996). While *Hull*, 971 F.2d at 1505, addressed the issue of a child who was injured and subject to a government imposed reversionary trust, the Court found that whether the child's parents would succeed to the child's award "is not relevant" to the trial court's inquiry of whether a reversionary trust is in the child's best interests. *Id.* The same analysis is relevant in considering what is in the best interests for Plaintiff Simson, an injured adult due to the negligence of the Defendant. The *Hull* Court explained:

> Thus, the court need not and should not consider whether either the government or the parents assume a risk or whether either might receive a "windfall" upon [the plaintiff's] untimely death because of the presence or absence of a reverter, as the court did in *Reilly*, 665 F. Supp. at 1026-20.[3] *The award is to compensate [the plaintiff], and [the plaintiff] only. Thus, the possibility that the parents might succeed to [the plaintiff's] award is not relevant*. Similarly, once the amount of the award is calculated fully, but not excessively, to absolve the government of its malfeasance, the possibility of a reverter to the government is not relevant. Both possibilities are only incidental to what must be the only inquiry after the proper amount of the award has been calculated and paid: How should it best be structured to benefit [the plaintiff]?

*Id.* (emphasis added). Moreover, a reverter to the government—the tortfeasor, in this case—would not be in Plaintiff Simpson's best interests; rather, the remaining funds may be better served if given to another potential recipient such as a charity of Plaintiff Simpson's choice or one chose by her family. *Id.* Thus, as the *Hull* court emphasized, "[t]he selection of the beneficiary of the reverter interest, just as the decision to adopt a reverter in the first place, must be made solely from [the plaintiff's] perspective and the question should be what would best advance [the plaintiff's] interests and preferences." *Id.* Here, Defendant has no evidence that the reversion of remaining funds back to the government would advance Plaintiff Simpson's "interests and preferences." There is also no evidence—or even the suggestion—that Plaintiff Simpson's family would provide anything less than suitable care and attention for the duration of her natural life.

## II. PRECEDENT SUPPORTS PLAINTIFFS' POSITION THAT A REVERSIONARY TRUST IS IMPROPER AND WOULD NOT ASSIST PLAINTIFF SIMPSON.

Courts all over the country have concluded that the United States is not entitled to a reversionary interest in any future economic damages remaining in the trust following the plaintiff's death. *See, e.g., infra, Vanhoy v. United States,* 514 F.3d 447, 455-56 (5th Cir. 2008).

---

[3] In *Reilly v. United States*, 665 F. Supp. 976 (D.R.I. 1987), *aff'd in part and remanded on other grounds*, 863 F.2d 149 (1st Cir. 1988), the court affirmed a lump sum judgment in the absence of the parties' agreement to structure the future care award.

*See also Frankel v. United States*, 466 F.2d 1226 (3d Cir. 1972) (affirming district court's rejection of the imposition of a reversionary trust); *Malmberg v. United States*, 2018 U.S. Dist. LEXIS 62730, * 44 (N.D.N.Y. Apr. 13, 2018) (finding that "creation of a reversionary trust would not be in Plaintiff's best interest"); *Peterson v. United States,* 469 F. Supp. 2d 857 (D. Haw. 2007) (refusing to impose a reversionary trust because the defendant did not prove it would be in the child's best interests); *Davidson v. United States HHS,* 2007 U.S. Dist. LEXIS 81016 (E.D. Ky. Oct. 30, 2007) (finding that there was no evidence submitted by the defendant that a reversionary trust is necessary for the protection of the minor child); *S.K. v. United States,* 2003 U.S. Dist. LEXIS 25211 (S.D. Cal. June 10, 2003) (finding that "the government has not met its burden of proof that a reversionary trust is in [the minor child's] best interest"); *Wyatt v. United States,* 944 F. Supp. 803 (E.D. Mo. 1996) (denying motion for reversionary trust because the defendant failed to demonstrate the trust would be in the plaintiff's best interest).

The *Vanhoy* decision, which arises out of Louisiana law, is particularly instructive here because Louisiana has a statute similar to New Mexico's Medical Malpractice Act, NMSA § 41-5-1, *et seq.*, that sets forth a limit on future damages for qualified healthcare providers. Although the *Vanhoy* court recognized that the government should be treated to the same extent as a private individual under like circumstances, it held that the cap on future damages should not apply to the federal government because it is not a qualified healthcare provider. 514 F.3d at 542. As in this case, the government had not filed or contributed to the Louisiana patients' compensation fund; thus, the government was not in "like circumstances" as private qualified healthcare providers for purposes of entitlement to the cap's protection. *Id.* The *Vanhoy* court also rejected the government's proposed reversionary trust because (1) the FTCA does not authorize damage awards that require the United States to perform continuing obligations on an as-incurred basis

similar to that under Louisiana's patients' compensation fund; (2) the plaintiff "cannot be assured of receiving such payments for as long as necessary and without limit"; and (3) the tort damages cap under the Louisiana medical malpractice statute is a "passive, one-time line drawn in the dust whereas payment for future care is an active, continuing, and indeterminable obligation for the lifetime of the victim." *Id.* at 452-453. Thus, held the court, the Louisiana statute's "treatment of future medicals for private individuals cannot be replicated—by a reversionary trust or other such mechanism—whereas [the statute's] treatment of basic damages for professional negligence and its statutory cap thereon are susceptible of replication." *Id.* at 453.

The *Vanhoy* court also rejected the government's argument—undoubtedly to be made here by Defendant—that the creation of a reversionary trust is authorized by a statute that governs the payment of future medical damages awarded in ordinary personal injury suits brought against political subdivisions of the state. Because the FTCA makes the government liable in the "same manner and to the same extent as private individual, not a state political subdivision," *id. at* 453 (emphasis in original), the reversionary trust remedy is not afforded to a private individual. Thus, the reversionary trust mechanism cannot be imported and applied to the government. *Id.*

As in *Vanhoy*, Plaintiffs here vigorously oppose the creation of a reversionary trust because it is not in Plaintiff Simpson's best interests. As the Tenth Circuit stated in *Hull*, plaintiff's consent—or lack thereof—is "highly relevant" whether the district court should order the plaintiff's damages be paid in the form of a reversionary trust. 971 F.2d at 1505. As the tortfeasor, Defendant should not be in a position to dictate how damages are to be paid to the victim. An out-of-state third party administrator will not adequately, timely, and fairly assess Plaintiff Simpson's future and ever-changing medical needs. Tragically, the trust's administrator's focus will surely be on protecting the funds rather than on what expenditures are in her best interests.

In addition, as the Court held in *Peterson*, Defendant's anticipated argument that a reversionary trust would allegedly avoid any windfall to Plaintiff Simpson's estate in the event she passes away earlier than her life expectancy is unpersuasive and does not support the imposition of a reversionary trust. The *Peterson* court stated:

> [A]ll life expectancies, even those made by an insurance carrier, are uncertain, and thus, the possibility of a windfall is present in every case. *See Reilly v. United States*, 665 F. Supp. 976, 1018 (D.R.I. 1987) (''The risk that a foreshortened life expectancy will result in overcompensation to a successful tort plaintiff is present in virtually every personal injury case.'') . . . Thus, . . . if Izzy dies early, his parents do not get a windfall, but instead are compensated ''for assuming the risk of having to cover [Izzy's] expenses if he outlives the income provided by the award.'' . . . If this Court were to impose a reversionary trust then Plaintiffs would bear the risk of Izzy outliving the 27 years and receive no possible benefit for assuming that risk, yet Defendant would receive the benefit of a reverter, without shouldering any risk. As the court noted in *Reilly*, such a situation does not comport with principles of fairness. 665 F. Supp. at 1018.

468 F. Supp. 2d at 860-64. (Internal citations omitted). The *Peterson* court went on to hold that, as in this case, "there is no reason for concern over Izzy's safety because his parents have the right to receive the unspent portion of the award in the vent that he dies earlier than 27 years." *Id.* at 861.

In conclusion, it is wholly unacceptable for Defendant to insist on a Reversionary Trust in this case. Plaintiffs suffered great injury when their mother and spouse suffered an extensive brain injury as a result of Defendant's complete incompetence at the NNMC. Her family should not be required to continue battling with the Government over benefits for medical care and expenses it caused over Plaintiff Simpson's lifetime to which she is entitled. The sample Reversionary Trust was drafted to protect the tortfeasor, *not* for Plaintiff's benefit. It is replete with provisions that grant too much discretion to the Government's third-party Administrator, which will result in untimely payment of much-needed medical care and expenses, as well as potential additional

lawsuits for breach of contract, breach of fiduciary duty, and mismanagement. Plaintiffs should not continue to be at Defendant's mercy when Defendant caused Plaintiff Simpson a lifetime of misery for the balance of her life.

**CONCLUSION**

WHEREFORE, Plaintiffs respectfully request that the Court grant *their Motion in Limine In Opposition to the Establishment of a Reversionary Trust* and:

(1) reject any proposal by Defendant that the Defendant and the Department of Justice establish a reversionary trust;

(2) that a trust company such as Zia Trust Company be the trustee of any funds which may be received on behalf of Plaintiff Simpson;

(3) that Zia Trust Company will be subject to both state and federal laws in the management, administration, and oversight of such trust funds;

(4) that such approach of utilizing a New Mexico bank with the requisite experience in the trust management of trust funds is in the best interests of Plaintiff Simpson; and

(5) and for any other and further relief deemed warranted under the circumstances.

Respectfully submitted,

BARUDIN LAW FIRM

***/s/ Theodore W. Barudin***
Theodore W. Barudin
7900 Menaul NE
Albuquerque, NM 87110
Phone: 505-332-1800
Fax: 505-271-1888
tbarudin@barudinlaw.com

BENCOE & LACOUR, PC
Lori Bencoe
Cherie LaCour
9201 Montgomery Blvd. NE # 404

Albuquerque NM 87111
(505) 247-8800
lori@bencoelaw.com
cherie@bencoelaw.com

KAPLAN & LUKOWSKI, LLP
Ronald Ivan Kaplan
333 Sandy Springs Circle, Suite 200
Atlanta, GA 30328
Phone: 404-845-0012
Fax: 404-845-0028
rik@kaplanlegal.com

*Attorneys for Plaintiffs*

## CERTIFICATION OF FILING

This is to certify that on September 8, 2020, Plaintiffs filed this *Motion In Limine In Opposition to the Establishment of a Reversionary Trust* via CM/ECF and served said *Motion* via electronic filing and U.S. Mail to:

Roberto D. Ortega
United States Attorney's Office
District of New Mexico
P.O. Box 607
Albuquerque, NM 87103
(505) 346-7282

*/s/ Theodore W. Barudin*
Theodore W. Barudin