IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TAMMY SIMPSON, Individually and
MARVIN CHARLEY, Individually, Husband and Wife,
and TAMMY SIMPSON, as Guardian and Next
Friend of P.S. and B.C., Minor children,

        Plaintiffs,

vs.                               No. 1:18-cv-01169-KWR-LF

THE UNITED STATES OF AMERICA,

        Defendant.

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
ON DEFENDANT USA'S FIFTH, SIXTH
AND ELEVENTH AFFIRMATIVE DEFENSES**

COME NOW Plaintiffs, by and through their attorneys of record and pursuant to Fed. R. Civ. P., Rule 56(c) and D.N.M.LR-Civ. 56.1 and pray for this Court's entry of an Order dismissing Defendant USA's Fifth, Sixth and Eleventh Affirmative Defenses of comparative fault, unavoidable medical complication and failure to mitigate. As grounds for this Motion, Plaintiffs state that Defendant has not met their burden of proof on these matters and that the law entitles Plaintiffs to an Order granting summary judgment as a matter of law.

    **I.**    **INTRODUCTION**

Plaintiffs, as husband and wife with two minor children, brought this Federal Tort Claims Act ("FTCA") against the U.S.A. to obtain compensation for damages caused by the negligence of agents of Northern Navajo Medical Center, an Indian Health Services facility. The healthcare giving rise to this action was provided by primary care physician Sara Michaels MD to Plaintiff Tammy Simpson in 2016. Dr. Michaels had managed Tammy Simpson's documented hypercoagulable state and history of multiple thrombotic or "clot" events (including DVTs and

PEs) since 2007. Plaintiffs contend that Dr. Michaels' conduct fell below the standard of care in April-May 2016 when she stopped Ms. Simpson's anticoagulation therapy, and that as a result of that breach of the standard of care, Ms. Simpson suffered a devastating ischemic stroke in September 2016 that resulted in permanent injuries and damages.

Depositions and discovery in this case have concluded, and the following undisputed facts and legal authorities support this Court's entry of an Order finding that Defendant USA's Fifth, Sixth and Eleventh Affirmative Defenses should be dismissed as a matter of law.

## II. UNDISPUTED MATERIAL FACTS

1. Tammy Simpson was diagnosed with her first pulmonary embolus on January 5, 2007. [*USA Resp RFA No. 2*];[1]

2. Mrs. Simpson was seen on April 9, 2009 for an intra-uterine pregnancy. Less than 2 weeks later, she suffered a miscarriage while on Coumadin. [*Plaintiff's Complaint ¶19 Doc 1 filed 12/12/18*];

3. Tammy Simpson suffered a second pulmonary embolus in April 2009. [*USA Resp RFA No. 3*];

4. Tammy Simpson was followed in the Coumadin Clinic in April 2009 after the second pulmonary embolus. [*USA Resp RFA No. 4*];

5. On July 2, 2009, Ms. Simpson's anti-coagulation therapy was switched from Coumadin to Lovenox as she was possibly pregnant and wanted to conceive. [*Doc 1 ¶22*];

6. On August 13, 2009, Mrs. Simpson again was pregnant and was switched back to Lovenox. [*Doc 1 ¶24*];

---

[1] All USA Responses to Requests for Production referenced in Plaintiffs' Undisputed Material Facts are attached as Ex. 1 to Plaintiffs' Motion for Summary Judgment on Admitted and Undisputed Material Facts. (Doc. 89, filed 9/14/20)

7. On October 16, 2009, Mrs. Simpson was put back on Coumadin after she miscarried her pregnancy. [*Doc 1 ¶25*];

8. Mrs. Simpson remained on Coumadin for 6 months until February 2, 2010 [*Doc 1 ¶26*];

9. On February 10, 2010, Donald Brunk, MD stopped Tammy Simpson's Coumadin. [*USA Resp RFA No. 8*];

10. On February 10, 2010, Tammy Simpson "graduated from clinic". [*USA Resp RFA No. 9*];

11. In November 2010, Dr. Michaels noted that Ms. Simpson was pregnant again. [*Doc 1 ¶28*];

12. On November 14, 2010, Dr. Michaels ordered a hypercoagulable work-up taken on Tammy Simpson. [*USA Resp RFA No. 10*];

13. On November 18, 2010, the Protein C Antigen was reported low at 58% with the normal range 70-140. [*USA Resp RFA No. 12*];

14. On November 18, 2010, Dr. Michaels had failed to diagnose Tammy Simpson with a hypercoagulable state. [*USA Resp RFA No. 14*];

15. On April 8, 2011, Dr. Michaels started Tammy Simpson on Lovenox. [*USA Resp RFA No. 15*];

16. On August 11, 2015, Faraz Sandhu, MD recommended life-long anticoagulation for Tammy Simpson. [*USA Resp RFA No. 16*];

17. Ms. Simpson delivered her baby on November 6, 2011. [*Doc 1 ¶35*];

18. On December 20, 2011, Dr. Michaels gave an order to Amber Payne, PA to discontinue Tammy Simpson's Lovenox. [*USA Resp RFA No. 17*];

19. On August 8, 2015, Tammy Simpson was diagnosed with a DVT of her right leg and was placed on Lovenox at San Juan Regional Medical Center ("SJRMC"). [*USA Resp RFA No. 19*];

20. On August 10, 2015, Tammy Simpson was readmitted to SJRMC with multiple pulmonary emboli which was her third DVT/PE [*USA Resp RFA No. 20 & 21*];

21. Tammy Simpson was placed on Eliquis for 6 months after her August 10, 2015 admission. [*USA Resp RFA No. 22*];

22. On October 19, 2015, Eliquis was discontinued for Tammy Simpson. [*USA Resp RFA No. 23*];

23. On October 19, 2015, Tammy Simpson was re-started on Coumadin by Ashlee Walls, MD and Kendall Van Tyle, PharmD. [*USA Resp RFA No. 24*];

24. On November 13, 2015, Dr. Michaels noted that previous "hypercoagulable work-up neg." [*USA Resp RFA No. 27*];

25. Dr. Michaels provided Dr. Neidhart with the wrong information when she consulted him. [*USA Resp RFA No. 30*];

26. On May 18, 2016, Brandon Anderson, PharmD. spoke with Dr. Michaels who advised "pt. does not need to continue warfarin at this time. Pt. to receive prophylactic warfarin when traveling long distances or has high risk behavior for blood clots. Pt. to follow up with the provider on May 31, 2016 @ 0900." [*USA Resp RFA No. 32*];

27. On September 14, 2016, Tammy Simpson was diagnosed with superficial thrombophlebitis of the left arm. [*USA Resp RFA No. 33*];

28. On September 14, 2016, Keith at the anticoagulation clinic advised Dr. Burnison that "I couldn't do a referral from the ED-it would have to come from Dr. Michaels. He recommended warfarin 6 mg po. qd. and Lovenox bid". [*USA Resp RFA No. 34 & 35*];

29. On September 14, 2016, Dr. Burnison properly treated the superficial thrombophlebitis of the Tammy Simpson's left arm. [*USA Resp RFA No. 36*];

30. Ms. Simpson does not remember the ER visit or Dr. Burnison, but she filled the prescriptions. *See Plaintiffs' First Motion for Summary Judgement on Liability and Causation, Exhibit 2, Excerpts to Tammy Simpson Depo, at pp. 180-183 and Ex. 5 to depo (photo of enoxaparin prescribed by Dr. Burnison on 09/14/16)*.

31. Ms. Simpson testified that if Dr. Burnison told her to take this medication she would have followed his instruction because "I followed the doctors." *Id at p. 183 line 20 to p. 184 line 4*.

32. Tammy's husband Marvin Charley testified that the morning after the SJRMC ER diagnosed her with the superficial venous thrombus, she went to Shiprock (NNMC) and picked up her prescription for Lovenox and she followed the doctor's order to take it as far as he knows. *See Plaintiffs' First Motion for Summary Judgement on Liability and Causation Exhibit 3, Marvin Charley Deposition Excerpts, at p. 31 lines 6-10, 22-25, p. 32 lines 1-5, and p. 32 line 24 to p.33 line 5*.

33. Marvin Charley testified that from 2007 on his wife was compliant about taking her medications and following her prescriptions. *Id, p. 19 lines 8-17 and p. 28 lines 9-14*.

34. On September 17, 2016, Tammy Simpson suffered a right middle cerebral artery territory infarction. [*USA Resp RFA No. 37*];

35. Defendant USA stipulated to the dismissal of Dr. Neidhart and San Juan Oncology as parties to the claim. [*Doc 61 filed 2/5/20*];

36. Defendant USA's Answer to Plaintiffs' Complaint pled Defendant was entitled to have its liability for Plaintiffs' damages, if any, reduced according to New Mexico law of comparative fault. N.M.S.A. 1978 § 41-3A-1. [*Def Answer*, *5th Affirmative Defense, Doc 14 filed 4/1/19*];

37. Defendant USA's Answer pled that if Plaintiffs suffered injuries and damages, which is specifically denied, then the injuries and damages resulted from unavoidable medical complications for which Defendant is not responsible. *[6th Affirmative Defense, Doc 14 filed 4/1/19]*;

38. Defendant USA's Answer pled that Ms. Simpson failed to mitigate her damages *[11th Affirmative Defense, Doc 14 filed 4/1/19]*;

39. USA's hematology expert Jose Avitia, MD was deposed on April 15, 2020. *Dr. Avitia Depo Excerpts attached hereto as Exhibit 1;*

40. Dr. Avitia opines Tammy Simpson was non-compliant with coumadin instructions in 2009 and 2011 because she became pregnant during that time. [*Avitia 49, 59-60];*

41. Dr. Avitia does not consider it noncompliance for a patient to desire to change medication. [*Avitia 50*];

42. Dr. Avitia does not consider it noncompliance for a patient to miss a couple of doses of medication. [*Avitia 69*];

43. Dr Avitia opined it is the standard of care to let a patient choose whether or not to continue taking Coumadin, if given the choice. [*Avitia 87-88, 108-9*];

44. Dr. Avitia implies in his report that there are "in theory" alternate *possible* causes of Ms. Simpson's stroke. [*Avitia Report p. 7, attached as Exhibit 2*];

45. Dr. Avitia did not offer any opinions about Ms. Simpson's damages or future care needs;

46. USA's cardiology expert Neal Shadoff, MD was deposed on May 21, 2020. *Dr. Shadoff Depo Excerpts attached hereto as Exhibit 3*;

47. Dr. Shadoff opines that Ms. Simpson's stroke was caused by glucose intolerance and platelet aggregation and that since she did not have protein C deficiency, that could not have been the cause of her stroke. [*Shadoff 93*];

48. Dr. Shadoff opines that since Ms. Simpson's imaging and diagnostic testing after the stroke did not show deep venous or central clots then "something else" must have caused her stroke. [*Shadoff 93*];

49. Dr. Shadoff admits Ms. Simpson was not diagnosed with diabetes. [*Shadoff 96*];

50. Dr. Shadoff bases his "glucose intolerance" theory on a couple of borderline labs taken in the past. [*Shadoff 96*];

51. Dr. Shadoff provides no basis for his "platelet aggregates" theory. [*Shadoff 93-95*];

52. Dr. Shadoff's opines, based on old medical records, that Ms. Simpson has no neurological deficits. [*Shadoff 90*];

53. Dr. Shadoff admits he is not trained, certified or practicing in rehab medicine and cannot dispute the findings in Plaintiffs' damages expert's, Dr. Cutter's, report. [*Shadoff 88-89*];

54. Dr. Shadoff also admits he is not trained in neuropsychology and has no basis to agree or disagree with Plaintiffs' neuropsychology expert, Dr. Jung. [*Shadoff 91-92*];

*Plaintiffs' MSJ Defendant USA's Fifth, Sixth and Eleventh Affirmative Defenses*
*Page 7 of 19*

55. Plaintiff's hematology expert Kenneth Braunstein, MD was deposed on June 11, 2020. *Dr. Braunstein Depo Excerpts attached hereto as Exhibit 4*;

56. It is Dr. Braunstein's opinion to a reasonable degree of medical probability that if Ms. Simpson had been fully anticoagulated as of September 14, 2016, she would not have had the ischemic stroke. [*Braunstein 224, 227-228*].

### III.    LEGAL ARGUMENT & AUTHORITIES

#### A.    STANDARD OF REVIEW

A party may move for summary judgment on any claim or defense or on any part of any claim or defense. Fed. R. Civ. P. Rule 56(a), (c) and D.N.M.LR-Civ. 56.1. The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P., Rule 56(a). The court should state on the record the reasons for granting or denying the motion. *Id.*

On motion for summary judgment, The Court is to "view[s] all evidence and any reasonable inferences that might be drawn therefrom in the light most favorable to the non-moving party." *Riser v. QEP Energy,* 776 F.3d 1191, 1195 (10th Cir. 2015) *(quoting Croy v. Cobe Labs. Inc.,* 345 F.3d 1199, 1201 (10th Cir. 2003)). A "material" fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). "A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented." *E.E.O.C. v. Horizon/CMS Healthcare Corp.,* 220 F.3d 1184, 1190 (10th Cir. 2000). The court may consider admissions and facts conclusively established. *U.S. v. Farmers Mut. Ins. Ass'n of Kiron, Iowa,* 288 F.2d 560 (8th Cir. 1961*).*

The party opposing a motion for summary judgment must "set forth specific facts showing that there is a genuine issue for trial". *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir. 1990); see *Guest v. Berardinelli,* 2008-NMCA-144, ¶¶ 6-7, 145 N.M. 186, 195 P.3d 353 (burden on nonmovant is to present admissible evidence that establishes a reasonable doubt, rather than a slight doubt). Entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 47 U.S. 317, 322, L. Ed. 2d 265 (1986).

  **B**. **APPLICABLE LAW FOR MEETING BURDEN OF PROOF ON AFFIRMATIVE DEFENSES**

This Federal Tort Claims Act ("FTCA") action seeking damages from the USA for medical negligence is subject to the laws that would apply if Plaintiffs were suing a private person in New Mexico under similar circumstances. 28 U.S.C. §§ 1346(b), 2671 *et seq.*. Thus, there is no dispute that New Mexico's Medical Malpractice Act, §§41-5-1 NMSA 1978 *et seq.*, Supreme Court jury instructions and common laws forms the substantive law that applies in this medical malpractice case. *Id.*; *Gasperini v. Ctr. for Humanities*, 518 U.S. 415, 426-27 (1996); *Peña v. Greffet*, 110 F. Supp. 3d 1103, 1132 (D.N.M. 2015) (Browning, J.) (to determine applicable state law, court first considers any decision from the state's highest court that governs that particular area of substantive law). The New Mexico Supreme Court speaks both through written opinions and through Uniform Jury Instructions, which the court approves before they can be published.

Plaintiffs' burden when moving for summary judgment on their claims in a medical malpractice case would be to make a prima facie case of entitlement to summary judgment by showing that (1) the defendant owed the plaintiff a duty recognized by law; (2) the defendant breached the duty by departing from the proper standard of medical practice recognized in the

community; and (3) the acts or omissions complained of [proximately] caused the plaintiff's injuries. *Blauwkamp v. Univ. of N.M. Hosp.,* 1992-NMCA-048, 114 N.M. 228, 231, 836 P.2d 1249, 1252 (1992), citing SCRA 1986 13-1101 (now revised as UJI Civ. 13-1101 NMRA 2016) (with citations indicating removal of "proximately" per UJI Civ. 13-305 NMRA 2016). *See* also, *Romero v. Phillip Morris Inc.*, 2010-NMSC-035, ¶ 10, 148 N.M. at 721 and *State ex. Rel. Children Youth & Families v. Joe R.*, 1997-NMSC-038 ¶ 15, 123 NM 711 (moving party required to make prima facie showing of entitlement to summary judgment by showing no genuine issues are disputed).

A defendant has the same burden of proof to support **affirmative defenses**; when there is no triable issue of fact as to an affirmative defense, it is ripe for summary judgment adjudication. *Fidelity Nat'l Bank v. Tommy L. Goff, Inc.,* 92 N.M. 106, 583 P.2d 470 (1978). *See* also *Tafoya v Seay Brothers Corp.,* 1995-NMSC-003 ¶8, 119 NM 350, 352, 890 P.2d 803, 805 (1995) ("the party alleging the affirmative defense has the burden of persuasion") and *Jaramillo v. Kellogg*, 1998-NMCA-142, 125 N.M. 84.

In medical negligence cases such as this one, elements of claims and affirmative defenses are required to be established by expert testimony. *Jaramillo,* 1998-NMCA-142. *Lopez v. Southwest Comm'y Health Servs.*, 1992-NMCA-040, 114 N.M. 2; *Baer v. Regents of Univ. of California*, 1999-NMCA-005, 126 N.M. 508,510, *Goffe v. Pharmaseal Labs, Inc.,*1976-NMCA-123 ¶¶ 5-6, 90 N.M. 764, 568 P2d. 600; *Tafoya,* 119 NM at 352 ("the party alleging the affirmative defense has the burden of persuasion"). Further, expert testimony is generally required to establish causation. *Id.* "A party seeking a recovery or relying on a defense has the burden of proving every essential element of the claim or defense by the greater weight of the evidence. To prove by the greater weight of the evidence means to establish that something is more likely true than not true.

Evenly balanced evidence is not sufficient." UJI 13-304 NMRA.  The burden requires proof through evidence /testimony that the matter is "**more likely than not with a reasonable medical probability, not mere possibility**." *State v. Consaul*, 2014-NMSC-030, ¶69, 332 P.3d 850 (2014) (emphasis added).  In order to be admissible and probative, expert testimony about an element of a claim or defense in a medical malpractice case must meet this standard. Possibilities are insufficient.

### IV. THE LAW SUPPORTS AN ORDER DISMISSING DEFENDANT USA'S FIFTH, SIXTH AND ELEVENTH AFFIRMATIVE DEFENSES IN THIS CASE.

This Court should dismiss Defendant's Fifth, Sixth and Eleventh affirmative defenses for multiple reasons. First and foremost, Defendant USA has not met and cannot meet its burden of proving these affirmative defenses.  Defendant USA has disclosed no facts or lay or credible expert witness testimony for the purpose of proving the comparative fault of any Plaintiff or a third person. (UMF 36).  Defendant USA has disclosed no facts or lay or credible expert witness testimony for the purpose of proving Ms. Simpson's stroke was caused by an unavoidable medical complication.  (UMF 37).  Defendant USA has disclosed no facts or lay or credible expert witness testimony for the purpose of proving any Plaintiff has failed to mitigate their damages.  (UMF 38) No material facts exist that would create a genuine issue of material fact making it proper for these affirmative defenses to go to trial.  If this is true, which it appears to be based on evidence Plaintiffs have at this time, summary judgment dismissal of affirmative defenses Five, Six and Eleven is proper.

### A. DEFENDANT USA'S FIFTH AFFIRMATIVE DEFENSE OF COMPARATIVE FAULT MUST BE DISMISSED BECAUSE DEFENDANT HAS OFFERED NO EVIDENCE TO SUPPORT THE DEFENSE AND CANNOT MEET THEIR BURDEN OF PROOF.

Defendant USA cannot meet their burden of proving comparative fault by any Plaintiff or third person. To prove a defendant's fault should be reduced based on comparative negligence, the defendant must prove both that the plaintiff or third party was negligent and that such negligence contributed to cause the injury at issue. *See* UJI 13-2220 NMRA; *Scott v. Rizzo*, 1981-NMSC-021, ¶ 20, 96 N.M. 682 (stating the "thrust of the comparative negligence doctrine is to accomplish … apportionment of fault between or among negligent parties *whose negligence proximately causes* any part of loss or injury ….") (emphasis added). *See Tafoya,* 1995-NMSC at ¶8, 119 N.M. at 352 (the burden of persuasion rests on the party alleging an affirmative defense); *Diaz v. Feil*, 1994-NMCA at ¶5, 118 N.M. at 388 (stating requirements for medical malpractice action). Medical malpractice cases usually require expert medical testimony to establish departure from recognized standards in the community. *See Lopez*, 1992-NMCA at ¶13, 114 N.M. at 7. General statements alluding to comparative negligence do not merit a jury instruction on the theory. *Jaramillo,* 1998-NMCA at ¶10. (citing, *Brann v. Exeter Clinic, Inc.,* 127 N.H. 155, 498 A.2d 334, 337 (N.H.1985)).

Defendant USA has not produced any evidence that Plaintiff or a third party is comparatively negligent in this case. Defendant USA stipulated to the dismissal, with prejudice, all claims and affirmative defenses in this matter alleged against, or which could have been alleged against, Jeffrey Neidhart, M.D. and San Juan Oncology Associates, P.C.., the only third parties in this case. (UMF 35). No evidence has been presented by any fact or expert witness in this case that Dr. Neidhart, San Juan Oncology, or any other unnamed third party is contributorily negligent.

Further, Defendant USA has presented no evidence that any Plaintiff was comparatively negligent in this case. Plaintiff, Ms. Simpson, had a long-standing history of anticoagulation use. (See UMFs 1-30) Ms. Simpson and Mr. Charley both testified that during the extensive timeframe of Ms. Simpson's complicated anticoagulation history and specifically, during the 2016 timeframe that is the subject of this litigation, Ms. Simpson has followed her physicians' directions and had been compliant with her medication regimen. (UMF 30-33) The only arguments that Defendant USA's experts have made about "noncompliance" were that Ms. Simpson was noncompliant with physicians' instructions for the use of anticoagulation in 2009 through 2011 by choosing to get pregnant. (UMF 40-43). Defendant USA has no evidence that Ms. Simpson was noncompliant with her anticoagulant condition at any time from April 2016 until her stroke in September 2016, which is the relevant timeframe in this case. Defendant USA has no evidence that Ms. Simpson was noncompliant with her Coumadin as of April 2016 when Dr. Michaels informed her she could stop.[2] Additionally, Defendant USA has offered no expert opinion(s) in this case that any noncompliance by Ms. Simpson in 2016 was a cause of her stroke. The Defendant cannot produce sufficient evidence to support an affirmative defense of comparative negligence as required and thus is not sufficient to rise to a genuine issue of material fact.

There is no genuine issue of material fact about this affirmative defense and Plaintiffs are entitled to a summary judgment finding that as a matter of law dismissal of Affirmative Defense Five is proper.

---

[2] Plaintiffs will move to exclude the arguments defense experts have made about noncompliance with Coumadin instructions in 2009-2011 (i.e. by getting pregnant) as specious at best and not causally related to the breaches of the standard of care that were a cause of Ms. Simpson's harm and damages.

*Plaintiffs' MSJ Defendant USA's Fifth, Sixth and Eleventh Affirmative Defenses*
*Page 13 of 19*

**B.     DEFENDANT USA'S SIXTH AFFIRMATIVE DEFENSE OF UNAVOIDABLE MEDICAL COMPLICATION MUST BE DISMISSED BECAUSE DEFENDANT CANNOT MEET THEIR BURDEN OF PROOF AS THEIR EXPERT "OPINIONS" ARE UNRELIABLE, LACK FOUNDATION AND ARE SPECULATIVE.**

Defendant USA has failed to disclose any credible evidence which would allow it to meet its prima facie burden of proving Plaintiffs' injuries or damages were caused by an unavoidable medical complication at trial. Defendant USA has the burden of proof to support affirmative defenses and in order to meet that burden their affirmative defense must be supported by expert testimony. The burden of proof in civil negligence cases is more likely than not with a reasonable medical probability, not mere possibility. *State v. Consaul*, 2014-NMSC-030, ¶69, 332 P.3d 850. The expert's testimony must rest *upon a reliable foundation* and cannot be based upon speculation or assumptions. *State v. Downey*, 2008-NMSC-061, ¶ 25, 145 N.M. 232; Fed. R. Evid. 702. For a more detailed briefing of the requirements for admissible expert testimony and Dr. Shadoff's testimony specifically, Plaintiffs refer the Court to their *Motion to Exclude Testimony of Defense Expert Neal Shadoff, M.D.*, filed contemporaneously herewith, which Plaintiffs incorporate by reference as if set forth fully herein.

Both of Defendant's expert witnesses' testimony on this subject lacks foundation, is speculative and based upon assumptions not facts. There are no reliable bases for Dr. Avitia's and Dr. Shadoff's "opinions" that Ms. Simpson's stroke was possibly caused by something other than a blood clot that she developed after she was taken off Coumadin. Plaintiff's hematology expert, Kenneth Braunstein, MD. testified that if Ms. Simpson had been fully anticoagulated as of September 14, 2016, she would not have had the ischemic stroke. (UMF 55-56). Defendant USA and its experts have not produced any reliable, credible evidence to dispute Dr. Braunstein's opinion.

*Plaintiffs' MSJ Defendant USA's Fifth, Sixth and Eleventh Affirmative Defenses*
*Page 14 of 19*

Defendant USA's hematology expert, Dr. Avitia has provided no reliable, credible opinions that Ms. Simpson's stroke was caused by anything other than a blood clot that she developed after she was taken off Coumadin. Dr. Avitia speculates that "in theory" there are other "possible causes" of Ms. Simpson's stroke. (UMF 44) However, "theories" do not meet the necessary "more likely than not to a reasonable degree of medical probability" standard for expert testimony. Dr. Avitia has failed to identify what other "possible causes" lead to Ms. Simpson's stroke. (UMF 44-45) Additionally, Dr. Avitia has not provided any facts or literature to support his "theory". *Id.* An opinion with no basis in the facts of the case and with no reliable medical support is pure speculation and does not meet Defendant's burden of proof.

Defendant USA's cardiology expert, Dr. Shadoff, has provided no reliable, credible opinions that Ms. Simpson's stroke was caused by anything other than a blood clot that she developed after she was taken off Coumadin. Dr. Shadoff speculates that Ms. Simpson's stroke was caused by glucose intolerance and platelet aggregation and that since she did not have protein C deficiency, that could not have been the cause of her stroke. (UMF 47) Dr. Shadoff bases his opinion on a complete **LACK** of evidence. He speculates that since Ms. Simpson's imaging and diagnostic testing after the stroke *do not* show deep venous or central clots then "something else" must have caused her stroke. (UMF 48) Dr. Shadoff speculates that the "something else" that caused Ms. Simpson's stroke was some phantom glucose intolerance and platelet aggregation. Dr. Shadoff offers no evidence that Ms. Simpson suffered from "glucose intolerance". He admits Ms. Simpson was not diagnosed with diabetes and tries to bootstrap a "glucose intolerance" theory to a couple of borderline labs taken in the past. (UMF 49-50) As part of his speculation about the cause of Ms. Simpson's stroke, Dr. Shadoff raises the possibility of "platelet aggregates". Here again, there is no basis for Dr. Shadoff's testimony, and he admits he does not know what Ms.

Simpson's platelet count was at the time she was admitted for her stroke and acknowledges that nowhere in the medical records is there evidence Ms. Simpson had thrombocytopenia or a low platelet count. (UMF 51) Dr. Shadoff's testimony is insufficient to support an unavoidable medical complication to a reasonable degree of medical probability as required and thus is not sufficient to rise to a genuine issue of material fact. For a more in depth analysis of the insufficiency of Dr. Shadoff's opinions, Plaintiffs refer the Court to their *Motion to Exclude Testimony of Defense Expert Neal Shadoff, M.D.*, which Plaintiffs incorporate by reference as if set forth fully herein.

All expert opinions must be held to a reasonable degree of medical probability. Dr. Shadoff and Dr. Avitia are not meeting that threshold burden. Instead, they are making assumptions and engaging in conjecture and speculation, all of which is prohibited. Expert testimony must have a reliable basis. See discussion, *supra.* There are no reliable bases for Dr. Shadoff's and Dr. Avitia's "opinions" that Ms. Simpson's stroke was caused "in theory" by some other medical condition.

There is no genuine issue of material fact about this affirmative defense and Plaintiffs are entitled to a summary judgment finding that as a matter of law dismissal of Affirmative Defense Six is proper.

    **B.**    **DEFENDANT USA'S ELEVENTH AFFIRMATIVE DEFENSE OF FAILURE TO MITIGATE MUST BE DISMISSED BECAUSE DEFENDANT HAS OFFERED NO EVIDENCE TO SUPPORT THE DEFENSE AND CANNOT MEET THEIR BURDEN OF PROOF.**

Defendant USA cannot meet their burden of proving Plaintiff failed to mitigate her damages. Mitigation of damages is an affirmative defense that must be pled and proved by the defendant in a personal injury action. *Acme Cigarette Servs., Inc. v. Gallegos,* 1978-NMCA-036, 91 N.M. 577, 577 P.2d 885. The law in this state is that a person injured by the tort of another is required to use ordinary care to minimize or lessen the injuries sustained. UJI 13-1811

NMRA; *Rutledge v. Johnson,* 1970-NMSC-023, 81 N.M. 217, 465 P.2d 274. This principle has been applied most frequently in cases in which a plaintiff failed to recover fully from his injuries due to his failure to follow his doctor's instructions. See, e.g., *Martinez ex rel. Martinez v. Vigil*, 1987-NMCA-061, 105 N.M. 741, 737 P.2d 100. We note, however, that all that is required is that the injured party undertake ordinary or reasonable measures to mitigate damages. See *Mitchell v. Jones*, 1943-NMSC-020, 47 N.M. 169, 138 P.2d 522; *Selgado v. Commercial Warehouse Co.,* 75-NMCA-144, 88 N.M. 579, 544 P.2d 719; see also UJI 13-1811 NMRA.

Defendant USA has offered no evidence that will allow them to meet the burden of proof required for their mitigation of damages affirmative defense. Defendant disclosed no experts to address damages in this case. They have produced no lay or expert testimony in support of a claim that Plaintiffs failed to mitigate their damages. Dr. Avitia did not address damages in his report or his deposition. Dr. Shadoff was asked about damages in his deposition but admits he is not trained, certified or practicing in rehab medicine or neuropsychology and cannot dispute the findings in Plaintiffs' damages experts' reports. (UMF 52-54) For a more in depth analysis of the Defendant's inability to refute the evidence of Plaintiffs' damages, Plaintiffs refer the Court to their *Motion for Summary Judgment on Past and Future Damages*, *(Doc. 90, filed 9/14/20)*, which Plaintiffs incorporate by reference as if set forth fully herein. The Defendant cannot produce sufficient evidence to support an affirmative defense of failure to mitigate as required and thus is not sufficient to rise to a genuine issue of material fact.

There is no genuine issue of material fact about this affirmative defense and Plaintiffs are entitled to a summary judgment finding that as a matter of law dismissal of Affirmative Defense Eleven is proper.

WHEREFORE, for the reasons stated in this Motion, Plaintiffs respectfully ask this Court to enter an Order dismissing Defendant USA's Fifth, Sixth and Eleventh Affirmative defenses with prejudice. Plaintiffs ask for such other and further relief as this Court deems proper.

Respectfully submitted,

BENCOE & LACOUR LAW, PC

By */s/ Cherie L. LaCour*
    LORI M. BENCOE
    CHERIE L. LACOUR

    9201 Montgomery Blvd., NE, Suite 404
    Albuquerque, NM 87111
    Phone: (505) 247-8800
    Email: Lori@bencoelaw.com
    Cherie@bencoelaw.com
    *Co-Counsel for Plaintiffs*

    Theodore W. Barudin
    BARUDIN LAW FIRM, PC

    7900 Menaul Blvd., NE
    Albuquerque, NM 87110-4606
    Phone: (505) 332-1800
    Email: tbarudin@barudinlaw.com
    *Co-counsel for Plaintiffs*

    Ronald I. Kaplan, MD, JD
    Kaplan & Lukowski, LLP

    333 Sandy Springs Circle, Suite 200
    Atlanta, GA
    Phone: (404) 845-0012
    Email: rik@kaplanlegal.com
    *Co-counsel for Plaintiffs*

*Plaintiffs' MSJ Defendant USA's Fifth, Sixth and Eleventh Affirmative Defenses*
*Page 18 of 19*

## CERTIFICATION OF FILING

This is to certify that on September 22, 2020, Plaintiffs filed this *Motion* via CM/ECF and served it via electronic filing and electronic mail to:

    Roberto D. Ortega
    United States Attorney's Office
    District of New Mexico
    P.O. Box 607
    Albuquerque, NM
    87103 (505) 346-7282

*/S/ Cherie L. LaCour*
Cherie L. LaCour