IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TAMMY SIMPSON, Individually and
MARVIN CHARLEY, Individually, Husband and Wife,
And TAMMY SIMPSON, as Guardian and Next
Friend of P.S. and B.C., Minor children,

    Plaintiffs,

vs.                                                                                                                           No. 18-cv-1169 KWR-LF

THE UNITED STATES OF AMERICA,

    Defendant.

**UNITED STATES OF AMERICA'S MOTION TO DISMISS CLAIMS
FOR LACK OF SUBJECT MATTER JURISDICTION
AND MEMORANDUM IN SUPPORT**

Defendant United States of America, by and through its attorneys, respectfully submits this motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(c), or in the alternative for summary judgment under Fed. R. Civ. P. 56, and supporting memorandum. Plaintiffs' claims against the United States for Medical Negligence, which were filed pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 *et seq.*, should be dismissed for lack of subject matter jurisdiction for failure to exhaust administrative remedies, 28 U.S.C. § 2675. The same claims should be dismissed for being untimely under the requirements of 28 U.S.C. § 2401(b). In the alternative, and on the same basis, the United States seeks entry of summary judgment in its favor as a matter of law.

Pursuant to D.N.M. LR-CIV 7.1(a), counsel for Plaintiffs were notified of the filing of this motion and the motion is opposed.

**STATEMENT OF THE CASE**

This is a Federal Tort Claims Act ("FTCA"), 28 U.S.C. §2671, *et. seq.* claim that alleges negligence of federal employees at the Northern Navajo Medical Center ("NNMC") in Shiprock, New Mexico, arising from the medical care provided to Plaintiff Tammy Simpson. NNMC is a facility within the Indian Health Service ("IHS"). On various dates of treatment between 2010 and 2016, Ms. Simpson alleges that multiple physicians and other providers employed at NNMC failed to properly treat her hypercoagulable blood condition. As a result of these failures, she experienced thrombo-emboli, and clotting and occlusion of veins in the left arm and eventually suffered a stroke and permanent neurological injuries.

**STATEMENT OF UNDISPUTED MATERIAL FACTS ("UMF")**

For the purposes of this Motion only, the following material facts are uncontroverted:[1]

1.  On or about July 24, 2017, Plaintiff Tammy Simpson and her husband Marvin Charley filed four different administrative tort claims with the HHS, commonly known as Standard Form 95s ("SF-95s"). Plaintiffs did not file any additional or amended claims with the Agency. *Decl. of Erica Gibson, Exh. A.*

2.  The four administrative claims were comprised of Ms. Simpson's and Mr. Charley's individual claims and two separate claims on behalf of their minor children. Ms. Simpson's claims generally seek damages for the alleged personal injuries that she incurred after

---

[1] For the purposes of its motion to dismiss, the United States assumes the truth of the Complaint's material facts, but reserves the right to challenge them at a later time. *E.F.W. v. St. Stephen's Indian High Sch.*, 264 F.3d 1297, 1302-03 (10th Cir. 2001). The conclusory allegations, legal conclusions, and opinions couched as fact are not entitled to deference and need not be accepted as true. *See Hall v. Bellmon*, 935 F.2d 1106, 1110) (10th Cir. 1991) ("[T]he court need accept as true only the plaintiff's well-pleaded factual contentions, not his conclusory allegations.").

receiving medical treatment at NNMC on various dates between 2010 and 2016. The other three claims seek to recover damages for the derivative injuries allegedly suffered by Mr. Charley and the two children. *Plaintiffs' SF-95 Forms and Addenda, Def. Ex. B1-B4*.

3. In Tammy Simpson's individual SF-95, her "Basis of Claim" states in the addendum that "she was provided negligent and improper treatment by IHS, dba Northern Navajo Medical Center ("NNMC"), and acting through its implied, apparent and ostensible agents, including Sara Michaels M.D. and other IHS healthcare providers. Ms. Simpson claims that this negligent treatment was a cause of serious and permanent injuries and damages described herein." *Tammy Simpson SF-95 and Addendum, Def. Ex. B1*.

4. The same SF-95 includes a narrative describing select portions of Ms. Simpson's medical history beginning in 2006, and generally referencing distinct medical events pertaining to Ms. Simpson in 2007, 2009, 2010, 2015 and 2016. *Id., Addendum at p. 1-2*. The narrative makes reference to various medical events and records from 2011 to 2015 that are "littered with documentation stating that she is 'hypercoagulable with [a] history of PE' yet during this time her condition went untreated." *Id*.

5. On July 16, 2018, HHS notified Plaintiffs' attorneys by certified letter, return receipt requested, that it was denying all four claims and advised them that they were entitled to request reconsideration of the denial of their claims or file suit against the United States in the appropriate federal district court within six (6) months from the date of the mailing of the denial letter. *Denial Letter, Def. Ex. C*.

6. Plaintiffs did not seek reconsideration of their administrative claims. Rather, on December 12, 2018, Plaintiffs filed their Complaint under the Federal Tort Claims Act against the

3

United States and other private parties[2] in the United States District Court for the District of New Mexico. *See Doc. 1.*

7. In Plaintiffs' Complaint, Ms. Simpson expands her administrative claims, by alleging that:

> Defendant [United States] and its agents of employees breached the standard of care expected of them in caring for Plaintiff Simpson and were negligent in the following ways, *inter alia:*
>
> a. Failing to properly evaluate Mrs. Simpson for a hypercoagulable blood condition from 2010-2016;
>
> b. Failing to diagnose and treat Mrs. Simpson with a hypercoagulable blood disorder requiring anti-coagulation therapy for life based on laboratory results in 2010;
>
> c. Failing to continue proper anti-coagulation therapy after her baby was born in 2011;
>
> d. Failing to properly treat thrombo-emboli in August 2015;
>
> e. Failing to perform hypercoagulable workup as recommended after Mrs. Simpson's recurrent DVT and PE in August 2015;
>
> f. Failing to perform hypercoagulability evaluation and treatment plan for Mrs. Simpson in May 2016 or to refer her to a qualified hematologist for same;
>
> g. Failing to refer Mrs. Simpson for evaluation or receive an IVC filter in May 2016;
>
> h. Stopping Mrs. Simpson's anti-coagulation therapy in May 2016;
>
> i. Prescribing anti-coagulation Lovenox on an "as needed" basis in May 2016;
>
> j. Graduating Mrs. Simpson from the Coumadin Clinic in May 2016, and

---

[2] Those parties included federal employees employed by NNMC who were improperly named, and the United States was substituted in their places as the proper party. *Doc. 37.* The private physician defendants included Faraz Sandhu, MD, Steve Young,, MD, Jeffery Neidhart, MD, and James Neidhart, MD, and San Juan Oncology Associates. Upon Plaintiffs' motions and/or stipulations of the parties, each of those defendants were eventually dismissed from this lawsuit, leaving the United States as the sole defendant. *See Docs. 3, 15, 27 and 61.*

  k. Failing to admit Mrs. Simpson for emergent therapeutic anticoagulation based on clotting in her left arm and complaints of shortness of breath on September 14, 2016.

Doc. 1 ¶ 65 (a) – (k).

## **STANDARDS FOR DISMISSAL UNDER FED. R. CIV. P. 12(b)(1) and 12(c), OR FOR SUMMARY JUDGMENT UNDER FED. R. CIV. P. 56**

  The United States moves to dismiss a number of Plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(1) and 12(c) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. Under Rule 12(b)(1), a court may dismiss a complaint for "lack of subject-matter jurisdiction." When making a Rule 12(b)(1) motion, a party may go beyond the allegations contained in the complaint to challenge the facts upon which jurisdiction depends by relying on affidavits or any other evidence properly before the court. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). A court has wide discretion to allow affidavits and other documents to resolve disputed jurisdictional facts. *Davis v. United States*, 343 F.3d 1282, 1296 (10th Cir. 2003). In such instances, a court's reference to evidence outside pleadings does not convert the motion to dismiss to a Rule 56 motion for summary judgment. *Id.*, 343 F.3d at 1296, *quoting Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). Finally, once challenged, the party asserting jurisdiction has the burden of proving its existence. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 104 (1998). Where, however, the court determines that jurisdictional issues raised in a Rule 12(b)(1) motion are intertwined with the merits of the case, the motion should be resolved under either Fed. R. Civ. P. 12(b)(6) or Rule 56. *Franklin Sav. Corp. v. United States*, 180 F.3d 1124, 1129 (10th Cir. 1999), *cert. denied*, 528 U.S. 964 (1999); *Tippet v. United States*, 108 F.3d 1194, 1196 (10th Cir. 1997).

  A Rule 12(c) motion for judgment on the pleadings is evaluated using "the standard of review applicable to a Rule 12(b)(6) motion to dismiss." *Muller v. Vilsack*, No. 13-0431, 2015

WL 13665433, at *3 (D.N.M. March 30, 2015), citing *Corder v. Lewis Palmer Sch. Dist. No 38*, 566 F.3d 1219, 1223 (10th Cir. 2009). Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Under Fed. R. Civ. P. 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, "to state a claim to relief that is plausible on its face." *Id., citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A plaintiff must nudge his claims across the line from conceivable to plausible in order to survive a motion to dismiss." *Id*. The principles underlying the standard are, (1) when legal conclusions are involved in the complaint "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to those conclusions" and (2) "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id., citing Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009). Thus, mere "labels and conclusions," and "a formulaic recitation of the elements of a cause of action" will not suffice. *Id*. at 1191*, citing Twombly*, 550 U.S. at 555. Accordingly, in examining a complaint under Rule 12(b)(6), a court must disregard conclusory statements and look only to whether the remaining factual allegations plausibly suggest the defendant is liable. *Id*.

Summary judgment is proper where the movant demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed.

R. Civ. P. 1). "The moving party has the initial burden to show 'that there is an absence of evidence to support the nonmoving party's case.'" *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (quoting *Celotex,* 477 U.S. at 325). Once the movant meets this burden, Rule 56(e) requires the nonmoving party to designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 US. at 324. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

Whether brought under Rule 12(b)(1) or under Rule 56, Plaintiffs' burden remains essentially the same; they must present evidence sufficient to establish the Court's subject-matter jurisdiction by a preponderance of the evidence. *See United States ex rel. Hafler v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 n. 5 (10th Cir.1999). Consequently, the distinction between Rule 12(b)(1) and Rule 56 analysis is immaterial here because a waiver of the United States' immunity is a jurisdictional prerequisite to the Court exercising its judicial power in this case. Plaintiff cannot meet her burden.

Certain claims described herein by Plaintiffs against the United States should be dismissed for lack of subject matter jurisdiction due to Plaintiffs' failure to exhaust administrative remedies under 28 U.S.C. § 2675. Yet other claims should be dismissed because they are not timely pursuant to 28 U.S.C. § 2401(b). In the alternative, and on the same bases, the United States seeks entry of summary judgment in its favor as a matter of law.

### **FTCA REQUIREMENTS**

The United States, as a sovereign, is immune from suit unless it waives sovereign immunity and consents to be sued. *Harrell v. United States*, 443 F.3d 1231, 1234 (10th Cir. 2006). Absent an express waiver of sovereign immunity, federal courts lack subject matter jurisdiction. *Id.* "In

1946, Congress enacted the FTCA, which waived the sovereign immunity of the United States for certain torts committed by federal employees." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). The FTCA provides the exclusive remedy for tort actions against the United States and grants jurisdiction to district courts over such actions. 28 U.S.C. § 1346(b). Prior to instituting a claim against the United States under the FTCA, a Plaintiff must have filed a claim with the appropriate Federal agency and his claim must be finally denied by the agency in writing and sent by certified or registered mail. 28 U.S.C. § 2675(a). Once the denial letter is mailed, a claimant has six (6) months to file a tort claim against the United States, or it shall be forever barred. 28 U.S.C. § 2401(b).

There are two procedural hurdles for Plaintiffs to overcome in order to file a lawsuit pursuant to the FTCA: (1) an administrative exhaustion requirement; and (2) a statute of limitations. *See Barnes v. United States,* 776 F.3d 1134, 1139 (10th Cir. 2015). Together, the two steps define the time period within which plaintiffs may bring a suit. *Id*. A plaintiff must give timely notice to the federal agency of his or her claims pursuant to 28 U.S.C. § 2675(a), and must present the claim to the appropriate federal agency within two-years after the claim accrues, or it is "forever barred." *See* 28 U.S.C. § 2401(b). If the agency denies the claim, the claimant has six months to file a lawsuit in federal court. *Id*. The Tenth Circuit has made it clear that a claimant must satisfy both of Section 2401's prongs: 28 U.S.C. § 2401(b) bars a tort claim against the United States "unless it is presented to the proper agency within two years of its accrual *and* suit is commenced within six months of notice of the claim's denial by the agency." *Indus. Constructors Corp. v. U.S. Bureau of Reclamation,* 15 F.3d 963, 968 (10th Cir. 1994); *Franklin Sav. Corp. v. United States,* 385 F.3d 1279, 1287 (10th Cir. 2004)("Federal law bars any tort claim against the

United States unless it is presented to the appropriate federal agency within two years of the claim's accrual and filed within six months after notice of denial of the claim by that agency.")

## THE COURT LACKS SUBJECT MATTER JURISDICTION OVER SEVEN OF PLAINTIFFS' CLAIMS AGAINST THE UNITED STATES

### A. Plaintiffs' Unexhausted Claims Must be Dismissed For Failure to Exhaust Administrative Remedies

To the extent that Plaintiffs' Complaint alleges any claims not sufficiently presented in her SF-95, those claims must be dismissed for lack of subject matter jurisdiction. In particular, the allegations in paragraph 65(d) - (g) from the Complaint were not sufficiently described in Plaintiff Simpson's SF-95. In addition, three other claims are time-barred under the FTCA procedural requirements, notably paragraphs 65(a) - (c), as discussed *infra*. *See* Complaint, Doc. 1 at ¶ 65.

"The FTCA's jurisdictional statute, 28 U.S.C. § 2675(a), requires a would-be tort plaintiff to file '(1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum certain damages claim.'" *Benally v. United States*, 735 F. App'x 480, 484 (10th Cir. 2018), citing *Lopez v. United States*, 823 F.3d 970, 976 (10th Cir. 2016). The FTCA's "eminently pragmatic" written claim-presentation requirement requires that the written statement provide "due notice that the agency should investigate the possibility of particular (potentially tortious) conduct." *Estate of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 852 (10th Cir. 2005); citing *Dynamic Image Techs., Inc. v. United States,* 221 F.3d 34, 40 (1st Cir. 2000). The language of an administrative claim must give due notice to the agency that it should investigate the possibility of particular conduct. *Estate of Trentadue*, 397 F.3d at 852. The notice must alert the agency of "the facts and circumstances underlying a claim . . . rather than the exact grounds . . . upon which [the] plaintiff seeks to hold the government liable." *Id.* at 853. Regardless of the label employed, the notice must contain sufficient details about the factual basis of the claim

and the injuries alleged to alert the agency of the need to investigate the claim. *See e.g., Lopez v. United States*, 823 F.3d 970, 976 (10th Cir. 2016) (claim of medical malpractice did not provide notice of negligent credentialing claim); *James v. United States*, No. 15-cv-086 JCH-KBM, 2015 WL 13651151, at *1-2 (D.N.M. Oct. 29, 2015) (malpractice allegations against phlebotomist on one date did not give notice of negligence claims against other employees on another date range); *Staggs*, 425 F.3d at 885 (holding that informed consent claim was not disclosed in allegations of "departure from the standard of care" and "negligent management of [her] pregnancy," as the Administrative Claim did not mention "consent" or include a "suitable synonym").

For example, where claims for emotional distress are asserted, the underlying administrative claim must provide notice that the agency should investigate the possibility of particular (potentially tortious) conduct that caused such distress. *Estate of Trentadue*, 397 F.3d at 853.(emotional distress claim adequately presented, where administrative claim mentioned "emotional distress" and where facts asserted put agency on notice to investigate prison officials' conduct). If a plaintiff's claims are not sufficiently presented to the appropriate Federal agency pursuant to § 2675(a) prior to bringing suit against the United States, those claims must be dismissed for lack of subject matter jurisdiction. *Staggs v. United States ex rel. Dep't Health & Human Servs.*, 425 F.3d 881, 885 (10th Cir. 2005) (Court rejected the notion "that an administrative claim for medical negligence necessarily includes a lack of informed consent when the underlying state law treats lack of informed consent as negligence."); *Benally*, 735 F. App'x at 492 (Plaintiff's administrative claim failed to raise the possibility that she would pursue an informed consent claim and therefore district court's dismissal of that claim was upheld.) In *Benally,* the Tenth Circuit also rejected the argument that the standard of care treats surgery and the post-operative care period as a unified whole for a successful surgery. ("Given the laser-like

10

focus of Ms. Benally's administrative notices on the allegedly negative performance of her surgery, we conclude [her] notices lacked the facts and circumstances sufficient to raise the possibility of a claim for negligent post-operative care."). *Id.* at 489. Whether a plaintiff's administrative claim is sufficient to meet 28 U.S.C. § 2675(a)'s notice requirement is a question of law. *Staggs,* 425 F.3d at 884. To the extent that Plaintiff's Complaint alleges discrete claims not sufficiently presented in her SF-95, § 2675(a) bars those claims. *Trentadue,* 397 F.3d at 853; *Warren v. United States,* 244 F. Supp. 3d 1173, 1213 (D.N.M. 2017) (Browning, J.).

In their Complaint, Plaintiffs allege in paragraph 65(d) that the United States was negligent for "failing to properly treat [Simpson's] thrombo-emboli in August 2015." UMF Nos. 6 & 7. In her SF-95, however, Plaintiff Simpson noted that in August 2015, she was treated at San Juan Regional Medical Center for a DVT and three pulmonary emboli, for *which she received Eliquis and later transitioned to Coumadin*. (Emphasis added.) *See* UMF No. 4 and Addendum to SF-95 at 1. Plaintiffs did not file any additional or amended claims with the Agency. UMF No. 1. The Complaint plainly contradicts the SF-95 language, which clearly states Ms. Simpson did receive the proper anticoagulants in August 2015, first Eliquis and then later transitioned to Coumadin. *Id.* Moreover, the evidence adduced in this matter shows that NNMC medical provider Dr. Michaels placed Ms. Simpson on Coumadin after the SJRMC visit, and Plaintiff's causation expert, Dr. Kenneth Braunstein, confirmed that this occurred. *See* Dr. Michaels Depo. at 69:21-70:7; 71:13-72:2, *Def. Ex. D;* Dr. Braunstein Depo. at 144:15 – 145:19, *Def. Ex. E.*

In Complaint paragraph 65(e), Plaintiffs allege that the United States was negligent by "failing to perform hypercoagulable workup as recommended after Mrs. Simpson's recurrent DVT and PE in August 2015." UMF Nos. 6 & 7. Plaintiff Simpson's SF-95 does not include any facts or information asserting that providers at NNMC should have performed a hypercoagulable

workup in or around August 2015 on Ms. Simpson. *See* UMF No. 4 and Addendum to SF-95 at 1-2. Rather, Plaintiffs broadly assert that Ms. Simpson's condition "went untreated" from 2011-2015, but do not provide any facts regarding a required "hypercoagulable work-up" in August 2015. Plaintiffs did not file any additional or amended claims with the Agency. UMF No. 1. Plaintiffs failed to raise claims by including any such facts at the administrative level and because they did not exhaust this claim the Court must dismiss it.

In Complaint paragraph 65(f), Plaintiffs allege that the United States was negligent by "failing to perform hypercoagulability evaluation and treatment plan for Mrs. Simpson in May 2016 or to refer her to a qualified hematologist for same."(sic) UMF Nos. 6 & 7. Plaintiff Simpson's SF-95 fails to include any claim or facts asserting that a hypercoagulability workup or referral to a hematologist was required in 2016. *See* UMF No. 4 and Addendum to SF-95 at 1-2. Rather, it merely alleges that a NNMC pharmacist spoke with Dr. Michaels in April 2016 about further treatment for Ms. Simpson's hypercoagulable state and that Dr. Michaels would speak to hematologist Dr. Neiderhart (sic) to discuss lifelong warfarin verse (sic) IVF filter. *Id*. There are no facts in the SF-95 stating that a hypercoagulability evaluation was indicated or required in the general time-frame of May 2016, or that a hematology consultation did not occur. Plaintiffs did not file any additional or amended claims with the Agency. UMF No. 1. Plaintiffs failed to exhaust this claim and the Court must dismiss it.

In Complaint paragraph 65(g), Plaintiffs allege that the United States was negligent by "failing to refer Mrs. Simpson for evaluation to receive an IVC filter in May 2016." UMF Nos. 6 & 7. Other than the statement that "[i]n November of 2015, an IHS pharmacist documented that Dr. Thoma thought Ms. Simpson may need an IVC filter placement for recurrent clots," there are no facts in the SF-95 which state this assertion, or which would have lead the Agency to investigate

12

the allegation that NNMC providers later failed to refer the patient for such evaluation in May 2016. *See* UMF No. 4 and Addendum to SF-95 at 1-2. If anything the SF-95 says otherwise – that in April 2016 Dr. Michaels was planning to speak to "hematologist Dr. Neiderhart (sic) to discuss lifelong warfarin verse (sic) IVF filter." Plaintiffs did not file any additional or amended claims with the Agency. UMF No. 1. Plaintiffs also failed to exhaust this claim and it must be dismissed.

### B. Three of Plaintiffs' claims are untimely and must be dismissed.

A tort claim against the United States *shall be forever barred* unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented. 28 U.S.C. § 2401(b). (Emphasis added.) This statute "bars a tort claim against the United State 'unless it is presented to the proper agency within two years of its accrual *and* suit is commenced within six months of notice of the claim's denial by the agency.'" *Ponce v. United States,* 2013 WL 6503535 at *14 (D.N.M., Nov. 25, 2013) (Browning, J.), quoting *Indus. Constructors Corp. v. U.S. Bureau of Reclamation,* 15 F.3d 963, 968 (10th Cir. 1994) (Emphasis in original). Prior to filing suit, a claimant may also elect to file a request for reconsideration with the agency. 29 C.F.R. § 14.9(b).

Under the FTCA, a tort action against the United States is "forever barred" unless filed with the appropriate federal agency within two years from the date the claim accrues. 28 U.S.C. § 2401(b). Timely presentment of an administrative claim is a prerequisite to filing suit in federal court. 28 U.S.C. §§ 2401 and 2675. Generally, a claim under the FTCA "accrues" at the time the claimant/plaintiff's injury occurs. *See Skwira v. United States*, 344 F.3d 64, 73 (1st Cir. 2003); *United States v. Kubrick*, 444 U.S.111, 117-18 (1979). "The general rule under the [Federal Tort

13

Claims] Act has been that a tort claim accrues at the time of the plaintiff's injury." *Kubrick*, 444 U.S. at 120. In *Kubrick*, "the Supreme Court recognized that a 'discovery' rule applies in the context of medical malpractice claims." *Skwira*, 344 F.3d at 73. Under the discovery rule, a tort claim will accrue "when an injured party 'knows both the existence and the cause of his injury.'" *Id.* (quoting *Kubrick*, 444 U.S. at 113). *See also id.* at 84 ("Although tort claims customarily accrue at the time of injury, the practice is widespread of providing extra time—either by delaying accrual or tolling the statute—where the basis for suit is not apparent when the initial injury occurs." (Boudin, J., concurring)).

The statute of limitations governing the filing of claims under the FTCA is to be strictly construed and cannot be waived. *Lopez v. United States*, 998 F. Supp. 1239, 1242 (D.N.M. 1998); *Bradley v. United States*, 951 F.2d 268, 270 (10th Cir. 1991). The Court should not take it upon itself to extend the waiver beyond that which Congress intended. *Kubrick*, 444 U.S. at 118.

In this case, Plaintiffs allege that the Defendant and its agents or employees breached the standard of care by failing to properly evaluate Ms. Simpson for a hypercoagulable blood condition from 2010-2016; failing to diagnose and treat her hypercoagulable blood disorder for life based on lab results in 2010; and failing to continue such therapy after her baby was born in 2011. Doc. 1, Complaint at ¶ 65(a)-(c); UMF Nos. 6 & 7. However, Plaintiffs did not file their administrative claims with HHS until July 24, 2017 – some seven years later. See UMF No. 1. For any of Plaintiffs' claims reaching back to 2010 and up to July 24, 2015, Plaintiffs did not make any prior administrative tort claims with HHS to raise any claims going back to 2010. Plaintiffs, therefore, failed to file said claims with the appropriate federal agency within two years from the date the claims accrued. 28 U.S.C. § 2401(b). Therefore, these three particular tort actions against the

United States in paragraph 65 (a)-(c) of their Complaint are "forever barred" because they are untimely and must be dismissed. *Id*.

## CONCLUSION

For the reasons discussed in this memorandum, the United States respectfully submits that the Court should dismiss with prejudice paragraphs 65 (d)-(g) of Plaintiffs' Complaint for lack of subject matter jurisdiction for failure to exhaust administrative remedies, 28 U.S.C. § 2675. This Court should also dismiss with prejudice paragraphs 65 (a)-(c) of Plaintiff's Complaint for lack of subject matter jurisdiction because these claims are untimely, 28 U.S.C. § 2401(b). In the alternative, the Court should issue an Order entering summary judgment in favor of the United States and dismissing the noted portions of Plaintiffs' Complaint with prejudice.

Respectfully submitted,

JOHN C. ANDERSON
United States Attorney

*/s/ Roberto D. Ortega 9/22/2020*
ROBERTO D. ORTEGA
Assistant United States Attorneys
P.O. Box 607
Albuquerque, NM 87103
(505) 346-7274
Roberto.ortega@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on September 22, 2020, I filed the foregoing pleading electronically through the CM/ECF system which caused all parties or counsel to be served by electronic means as more fully reflected on the Notice of Electronic Filing.

*/s/ Roberto D. Ortega 9/22/20*
ROBERTO D. ORTEGA
Assistant United States Attorney