IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TAMMY SIMPSON, Individually and
MARVIN CHARLEY, Individually, Husband and Wife,
and TAMMY SIMPSON, as Guardian and Next
Friend of P.S. and B.C., Minor children,

        Plaintiffs,

    vs.                                           No. 1:18-cv-01169-KWR-LF

THE UNITED STATES OF AMERICA,

        Defendant.

**PLAINTIFFS' SECOND MOTION FOR SUMMARY JUDGMENT ON
LIABILITY & CAUSATION: STOPPING ORAL ANTICOAGULANT BEFORE
RULING OUT OR CONFIRMING PROTEIN C DEFICIENCY
BREACHED THE STANDARD OF CARE & WAS A CAUSE OF HARM**

COME NOW Plaintiffs, by and through their attorneys of record and pursuant to Fed. R. Civ. P., Rule 56(c) and D.N.M.LR-Civ. 56.1, and pray for this Court's entry of an Order granting summary judgment and finding that as a matter of law, Defendant USA's conduct in stopping Plaintiff Tammy Simpson's oral anticoagulant in 2016 without first confirming or ruling out a Protein C deficiency hypercoagulable state was below the standard of care, and was a cause of harm to her. As grounds for this Motion Plaintiffs state that there are no material facts in dispute on these matters and that the law entitles Plaintiffs to an Order granting summary judgment as a matter of law.

    **I.**       **INTRODUCTION**

Plaintiffs, as husband and wife with two minor children, brought this Federal Tort Claims Act ("FTCA") against the U.S.A. to obtain compensation for damages caused by the negligence

of agents of Northern Navajo Medical Center ("NNMC"), an Indian Health Services (I.H.S.) facility. The healthcare at issue was provided by NNMC primary care physician Sara Michaels MD to Plaintiff Tammy Simpson in 2016. Dr. Michaels had documented and managed Tammy Simpson for hypercoagulable state through multiple thrombotic or "clot" events (including DVTs and PEs), since 2007. Despite her knowledge of that complex history, Dr. Michaels chose to stop Ms. Simpson's oral anticoagulation therapy in April 2016 without first testing to rule out a hypercoagulable state called "protein C deficiency" in light of past laboratory results that could not be disregarded. Plaintiffs seek a finding that that was negligent as a matter of law.

Plaintiffs also seek this Court's entry of an Order finding that stopping Ms. Simpson's daily anticoagulant medicine in late April 2016 was a cause of another clot event: Ms. Simpson suffered a devastating ischemic stroke in September 2016 that resulted in significant permanent injuries and damages. The undisputed facts and legal authorities set forth in this Motion support this Court's entry of an Order finding that Defendant USA's conduct constituted negligence as a matter of law and was a cause of harm as a matter of law.

This is the second of two Motions for Summary Judgment on liability and causation that Plaintiffs file to address distinct breaches of the standard of care resulting in harm that are not materially disputed. Their First Motion for Summary Judgment seeks a finding that it was negligent as a matter of law for Dr. Michaels, a family practice physician, not to refer Ms. Simpson to a hematology consultant. UJI 13-1103 NMRA 1987 (Duty to inform patient of need for another doctor). That motion also seeks a finding that that negligent omission was a cause of Ms. Simpson's stroke.

## II. UNDISPUTED MATERIAL FACTS

### A. Material Facts Incorporated by Reference from MSJ #1:

Plaintiffs refer the Court to their First Motion for Summary Judgment filed in this case on September 22, 2020 and incorporate Undisputed Material Facts 1-97 in that Motion into this Motion by reference as if they were set forth fully herein. Undisputed Material Facts 1-5 relate to Ms. Simpson's first thrombotic event, UMF 6-32 relate to Ms. Simpson's second thrombotic event, miscarriages and hypercoagulable testing, UMF 33-45 relate to Ms. Simpson's third thrombotic event, UMF 46-77 relate to Dr. Michaels' choice to stop daily anticoagulation again, UMF 78-87 relate to harm that resulted after stopping daily anticoagulation, and UMF 88-97 relate to expert opinions relevant to the duty to inform the patient of need for another doctor, breach and causation of harm. *See MSJ 1 (filed 9/22/2020)*.

The additional Undisputed Material Facts set forth below relate specifically to the question of Defendant USA's negligent failure to test for the presence or absence of a protein C deficient hypercoagulable state before stopping Ms. Simpson's oral anticoagulant in 2016.

### B. Additional Undisputed Material Facts:

1. Kenneth Braunstein M.D. is Plaintiffs' hematology standard of care expert; he has written two reports in this case. *Braunstein Affidavit and Exhibits 1-2 (Reports)*.

2. It is Dr. Braunstein's opinion that "Dr. Sara Michaels MD acted below the standard of care in treating Ms. Simpson, who had a known hypercoagulation disorder called Protein C deficiency, which requires lifelong anticoagulation. *Braunstein Affidavit at Exhibit 1 (1st report at p. 1).*

3. It is Dr. Braunstein's opinion that oral anticoagulants are the standard of care for treating patient with a hypercoagulable Protein C deficiency. *Id*; <u>Exhibit 1, Braunstein Depo Excerpts</u>, at p. 154.

4. It is Dr. Avitia's opinion that "[I]n a theoretical situation where someone does have a protein C deficiency and multiple clots, yes, indefinite anticoagulation would be appropriate and would be the standard of care." <u>Exhibit 2, Avitia Deposition Excerpts</u> at p. 82 lines 4-8.

5. It is Dr. Braunstein's opinion that because she had a hypercoagulable state due to protein C deficiency, it was below the standard of care for Dr. Michaels to discontinue Ms. Simpson's anticoagulation therapy in May 2016. *Id*.

6. It is undisputed that as of April 2016 Dr. Michaels has the result of Ms. Simpson's November 2010 hypercoagulable workup (lab test) that showed Protein C Antigen low at 58%. MSJ 1 UMFs 16-17 and 20.

7. It is undisputed that after noting in January that Ms. Simpson had had a low protein C test done when pregnant, Dr. Michaels never ordered a repeat protein C test. MSJ 1 UMF 28.

8. It is undisputed that in April 2016 when Dr. Michaels talked on the phone with hematologist Jeffrey Neidhart MD about Ms. Simpson's treatment plan, she erred and provided incorrect information to him, because she failed to tell him that Ms. Simpson's hypercoagulable protein C test that was low when she was pregnant in November 2010 had never been repeated since. MSJ 1 UMFs

9. Instead, in April 2016 Dr. Michaels told Dr. Neidhart that Ms. Simpson's hypercoagulability workup had been negative when in fact it had not been. MSJ 1 UMF 63 and RRFA No. 30 [Doc 89-1].

10. It is undisputed that as of April 2016 when Dr. Michaels called Dr. Neidhart, she knew she needed to repeat Ms. Simpson's hypercoagulable Protein C test because Ms. Simpson had had recurrent clots and multiple miscarriages. MSJ 1 UMF 30 *and see other MSJ 1 UMFs establishing medical history*.

11. It is Dr. Braunstein's opinion that standard of care for Ms. Simpson was to confirm or reject the diagnosis of protein C deficiency by redoing the test to get an accurate result. *Exhibit 1, Braunstein Deposition Excerpts*, at p. 154 lines 9-15.

12. This is because a patient with protein C deficiency has to be on anticoagulants. *Id*.

13. It is Dr. Avitia's opinion that Dr. Michaels should have repeated the protein C test when Ms. Simpson was not pregnant. *Exhibit 2*, p. 60 lines 22-25.

14. Dr. Avitia agrees that Dr. Michaels did not rule Tammy Simpson out of having a protein C deficiency before stopping her continuous anticoagulant in May 2016. *Exhibit 2*, p. 121 lines 8-15.

15. Dr. Avitia testified that he practices within the standard of care and that if he suspected a protein C deficiency was tested outside the clinical parameters [i.e. during pregnancy], that testing should be repeated and that would be his practice. *Exhibit 2*, p. 102 line 19 to 103 line 7.

16. Dr. Avitia admits that a patient with a hypercoagulable disorder is at increased risk for DVT and PE. MSJ 1, UMF 95.

17. Dr. Avitia admits that the biggest risk of having a pulmonary embolism is death. MSJ 1, UMF 96.

18. It is Dr. Braunstein's opinion that due to Dr. Michaels' negligence Ms. Simpson's known coagulation disorder went untreated for a number of months in 2016 and she suffered a right middle cerebral artery thrombosis with subsequent infarction of the territory of her brain supplied by her right middle cerebral artery on September 16, 2017. <u>Braunstein Affidavit, Ex. 1</u> at p. 1.

19. It is Dr. Braunstein's opinion that more likely than not with reasonable medical probability, if Dr. Michaels had not stopped Ms. Simpson's use of anticoagulants, she would not have suffered a thrombotic cerebral vascular accident. *Id.;* UMF 97 from MSJ #1.

## III. LEGAL ARGUMENT & AUTHORITIES

### A. STANDARD OF REVIEW

A party may move for summary judgment on any claim or defense or on any part of any claim or defense. Fed. R. Civ. P. Rule 56(a), (c) and D.N.M.LR-Civ. 56.1. The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P., Rule 56(a). The court should state on the record the reasons for granting or denying the motion. *Id.*

On motion for summary judgment, The Court is to "view[s] all evidence and any reasonable inferences that might be drawn therefrom in the light most favorable to the non-moving party." *Riser v. QEP Energy,* 776 F.3d 1191*,* 1195 (10th Cir. 2015) *(*quoting *Croy v. Cobe Labs. Inc.,* 345 F.3d 1199, 1201 (10th Cir. 2003)). A "material" fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477

U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). "A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented." *E.E.O.C. v. Horizon/CMS Healthcare Corp.,* 220 F.3d 1184, 1190 (10th Cir. 2000). The court may consider admissions and facts conclusively established. *U.S. v. Farmers Mut. Ins. Ass'n of Kiron, Iowa,* 288 F.2d 560 (8th Cir. 1961).

The party opposing a motion for summary judgment must "set forth specific facts showing that there is a genuine issue for trial". *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir. 1990); see *Guest v. Berardinelli,* 2008-NMCA-144, ¶¶ 6-7, 145 N.M. 186, 195 P.3d 353 (burden on nonmovant is to present admissible evidence that establishes a reasonable doubt, rather than a slight doubt). Entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 47 U.S. 317, 322, L. Ed. 2d 265 (1986).

B. **APPLICABLE LAW FOR MEETING BURDEN OF PROOF ON EACH ELEMENT OF A MEDICAL NEGLIGENCE CLAIM**

This Federal Tort Claims Act ("FTCA") action seeking damages from the USA for medical negligence is subject to the laws that would apply if Plaintiffs were suing a private person in New Mexico under similar circumstances. 28 U.S.C. §§1346(b)(1), 2671. Thus, there is no dispute that New Mexico's Medical Malpractice Act, §§41-5-1 NMSA 1978 *et seq.*, Supreme Court jury instructions and common laws inform the substantive law that applies in this medical malpractice case. *Id.*; *Gasperini v. Ctr. for Humanities*, 518 U.S. 415, 426-27 (1996); *Peña v. Greffet*, 110 F. Supp. 3d 1103, 1132 (D.N.M. 2015) (Browning, J.) (to determine applicable state law, court first considers any decision from the state's highest court that governs that particular area of substantive

law). The New Mexico Supreme Court speaks both through written opinions and through Uniform Jury Instructions, which the court approves before they can be published.

"A party seeking a recovery or relying on a defense has the burden of proving every essential element of the claim or defense by the greater weight of the evidence. To prove by the greater weight of the evidence means to establish that something is more likely true than not true. Evenly balanced evidence is not sufficient." UJI Civ. 13-304 NMRA. The burden requires proof through evidence /testimony that the matter is "**more likely than not with a reasonable medical probability, not mere possibility**." *State v. Consaul*, 2014-NMSC-030, ¶69, 332 P.3d 850 (emphasis added). In order to be admissible and probative, expert testimony about an element of a claim or defense in a medical malpractice case must meet this standard. Possibilities are insufficient.

Plaintiffs' burden as movant for summary judgment in a medical malpractice case is to make a prima facie case of entitlement to summary judgment on any element of the claim: (1) the defendant owed the plaintiff a duty recognized by law; and/or (2) the defendant breached the duty by departing from the proper standard of medical practice recognized in the community; and/or (3) the acts or omissions complained of [proximately] caused the plaintiff's injuries. *Blauwkamp v. Univ. of N.M. Hosp.,* 1992-NMSCA-048, 114 N.M. 228, 231, 836 P.2d 1249, 1252, citing SCRA 1986 13-1101 (now revised as UJI Civ. 13-1101 NMRA 2016) (with citations indicating removal of "proximately" per UJI Civ. 13-305 NMRA 2016). *See* also, *Romero v. Phillip Morris Inc.*, 2010-NMSC-035, ¶ 10, 148 N.M. at 721 and *State ex. Rel. Children Youth & Families v. Joe R.*, 1997-NMSC-038 ¶ 15, 123 NM 711 (moving party

required to make prima facie showing of entitlement to summary judgment by showing no genuine issues are disputed).[1]

In medical negligence cases such as this one, elements of claims and affirmative defenses are required to be established by expert testimony. *Jaramillo v. Kellogg,* 1998-NMCA-142, 126 N.M. 84. *Lopez v. Southwest Comm'y Health Servs.*, 1992-NMCA-040, 114 N.M. 2; *Baer v. Regents of Univ. of California*, 1999-NMCA-005, 126 N.M. 508,510, *Goffe v. Pharmaseal Labs, Inc.,*1976-NMCA-123 ¶¶ 5-6, 90 N.M. 764, 568 P2d. 600; *Tafoya v Seay Brothers Corp.,* 1995-NMSC-003, ¶ 8, 119 NM 350, 352, 890 P.2d 803, 805 ("the party alleging the affirmative defense has the burden of persuasion"). Further, expert testimony is generally required to establish causation. *Id.*

Years ago, our Supreme Court held that the "administration of medicine" was a field of knowledge in which only an expert could give a competent opinion. *Woods v. Brumlop*, 1962-NMSC-133, 71 NM 221, 377 P.2d 520, 522. The more recent cases support and affirm this conclusion and establish that in New Mexico, a medical expert's testimony is generally essential on the standard of care, breach and causation in medical malpractice cases such as this one. *Lopez v. Southwest Community Health Servs* at ¶ 13, 114 N.M. at 7, 833 P.2d at 1188; *see also Blauwkamp; Toppino v. Herhahn*, 1983-NMSC-079, 100 NM 564, 673 P.2d 1297; *Pharmaseal Labs, Inc. v. Goffe,* 1977-NMSC-071, 90 N.M. 753, 568 P.2d 589, *aff'd in part rev'd in part*, 1976-NMCA-123, 90 N.M. 764, 568 P2d. 600.

---

[1] A defendant has the same burden of proof to support affirmative defenses; when there is no triable issue of fact as to an affirmative defense, it is ripe for summary judgment adjudication. *Fidelity Nat'l Bank v. Tommy L. Goff, Inc.,* 92 N.M. 106, 583 P.2d 470 (1978); *Jaramillo v. Kellogg*, 1998-NMCA-142,125 N.M. 84.

## C. PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON LIABILITY BECAUSE THERE IS NO DISPUTE THAT DR. MICHAELS BREACHED THE STANDARD OF CARE BY STOPPING MS. SIMPSON'S ORAL ANTICOAGULANT WITHOUT FIRST TESTING TO RULE OUT A PROTEIN C DEFICIENCY HYPERCOAGULABLE DISORDER.

The New Mexico Supreme Court has issued a jury instruction articulating the burden of proving duty and breach of the "standard of care" owed by a physician. UJI Civ. 13-1101 NMRA 1998 (duty of doctor). It also codifies the common law definition of "standard of care" and principle that expert testimony is required to prove whether or not the defendant physician "standard of care" was met:

> In treating and caring for a patient, doctor Sara Michaels M.D. is under the duty to possess and apply the knowledge and to use the skill and care ordinarily used by reasonably well-qualified primary care doctors practicing under similar circumstances, giving due consideration to the locality involved. A primary care doctor who fails to do so is negligent.
>
> The only way in which you may decide whether the doctor in this case possessed and applied the knowledge and used the skill and care which the law required of her is from evidence presented in this trial by doctors testifying as expert witnesses. In deciding this question, you must not use any personal knowledge….

*Id. (modified).* Expert testimony on the standard of care that a physician owed a patient can be offered by doctors from the same or other localities. *Pharmaseal v. Goffe*.

It is undisputed that Defendant USA's employed physician Sara Michaels MD is a family practice physician who chose to manage Plaintiff's hematology condition. As such, she should be held to the standard of care for a hematologist practicing under similar circumstances, consistent with UJI Civ. 13-1102 NMRA 1998 (duty of specialist). This instruction would be appropriate for the finder of fact at trial:

> Sara Michaels M.D., who held herself out as a specialist in hematology, having undertaken to treat and care for a patient in this specialized field, is under the duty to possess and apply the knowledge and to use the skill and care ordinarily used by reasonably well-qualified specialists practicing under similar circumstances,

> giving due consideration to the locality involved. A doctor who fails to do so is negligent.
>
> The degree of knowledge, skill, and care required of a specialist is usually higher than that required of a non-specialist, but it is never lower. Specialists are responsible for a certain base of knowledge in common with general practitioners, as well as additional knowledge in the field of their specialty.
>
> The only way in which you may decide whether the doctor in this case possessed and applied the knowledge and used the skill and care which the law required of her is from evidence presented in this trial by doctors testifying as expert witnesses. In deciding this question, you must not use any personal knowledge ….

*Id*. (modified). The parties both have hematology experts to offer testimony as evidence on the question of whether or not Dr. Michaels breached the standard of care she owed when she was managing Ms. Simpson's hematology condition, and on the question of whether or not any breach of the hematology standard of care was a cause of harm to Ms. Simpson as Plaintiffs contend it was. As this and other Motions filed on this topic show, Plaintiffs contend that Defendant Michaels breached the hematology standard of care in a number of ways.

Plaintiffs have met their prima facie burden of proving entitlement to summary judgment on this element of their negligence claim. It is undisputed that Dr. Michaels knew Ms. Simpson's hypercoagulable laboratory testing had been remarkable for a Protein C level that was deficient in the past, UMF 6, was concerned by that result since Ms. Simpson was pregnant it was obtained, UMF 7, admitted that her hypercoagulable Protein C test should be repeated in light of her history of recurrent clots and multiple miscarriages, UMF 10, but never repeated the test, even after talking with hematology specialist Jeffrey Neidhart MD in April 2016. UMF 7. Worse, it is undisputed that Dr. Michaels did not disclose this information to Dr. Neidhart when she consulted him before stopping Ms. Simpson's continuous oral anticoagulant therapy in May 2016. UMF 8-9.

There is no dispute that Dr. Michaels failed to rule out a protein C deficiency before stopping Ms. Simpson's continuous anticoagulant in May 2016. UMF 14. The experts for Plaintiffs and Defendant USA agree that indefinite oral anticoagulation is the standard of care for a patient with a hypercoagulable Protein C deficiency who has had multiple clots like Ms. Simpson had. UMF 2-4. The USA concedes that a patient with a hypercoagulable disorder like protein C deficiency increases a patient's risk of DVT and PE which can cause death. UMF 16, 17. It is thus no surprise that the experts agree that the standard of care required Dr. Michaels to repeat the protein C test to confirm it was normal before stopping Ms. Simpson's anticoagulation therapy in May 2016. UMF 11, 13, 15. She did not do that, or even consult with a hematologist about doing it, before she stopped Ms. Simpson's oral anticoagulant in May 2016. Her conduct was undisputedly below the standard of care, and Plaintiffs are entitled to an Order granting summary judgment on this element of her claim.

### D. PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON CAUSATION BECAUSE IT IS UNDISPUTED THAT STOPPING MS. SIMPSON'S ORAL ANTICOAGULANT WAS A CAUSE OF HER STROKE IN SEPTEMBER 2016

The second element of every medical malpractice tort claim is causation. In every case in which an act, omission or condition is said to have caused injury or harm, the New Mexico Supreme Court instructs that the following jury instruction applies for the finder of fact:

> An act or omission is a "cause" of injury if[2] it contributes to bringing about the injury, and if injury would not have occurred without it. It need not be the only explanation for the injury, nor the reason that is nearest in time or place. It is sufficient if it occurs in combination with some other cause to produce the result. To be a "cause", the act or omission, nonetheless, must be reasonably connected as a significant link to the injury.

---

[2] The phrase "unbroken by an independent intervening cause" is omitted from the form instruction because Defendant USA did not assert that affirmative defense in this case. See Answer to Civil Complaint [Doc 14]. The comments to UJI 13-305 NMRA state that this phrase is not appropriate when a defendant is merely arguing lack of causation. Sup. Ct. Order No. 11-8300-003, effective March 21, 2011.

UJI 13-305 NMRA 2011.

If the finder of fact concludes that Dr. Michaels breached the standard of care by stopping Ms. Simpson's oral anticoagulant in April 2016 without first testing to confirm or rule out a protein C deficiency hypercoagulable state, the causation question is whether or not that failure was a cause of harm. Plaintiffs have met their prima facie burden of proving entitlement to summary judgment on this element of their negligence claim, because they have proven that stopping Ms. Simpson's Coumadin in May 2016 was more likely than not **a** cause of her stroke four months later. UJI Civ. 13-305 NMRA. Plaintiffs' expert Dr. Braunstein has opined that if Dr. Michaels had not stopped Ms. Simpson's oral anticoagulants, she would not have suffered an ischemic cerebrovascular accident in September 26. UMF 18-19.

Defendant has not offered proof that the failure to provide Ms. Simpson oral anticoagulants to treat her hypercoagulable state in light of her history was more likely than not NOT a cause of her stroke. In contrast, all Defendant has been able to do is point to other plausible or possible reasons why a person like Ms. Simpson might *possibly* have a stroke. Defendant's hypotheses do not disprove Plaintiffs' evidence on causation. For the purpose of Plaintiffs' motion, they would not be relevant even if true, because there is no requirement that a Plaintiff show that the conduct complained of in a negligence case was THE cause of their harm – that is not the burden of proof that is required on the element of the claim. *See Blauwkamp*, UJI Civ. 13-305. What should be determinative to this Court is that Plaintiffs have shown that stopping Ms. Simpson's daily anticoagulation treatment in May 2016 was more likely than not a cause of the stroke she suffered four months later, and Defendant cannot disprove that.

Defendant's Sixth Affirmative Defense of "unavoidable medical complication" would only succeed if the USA could show that instead of their conduct, something entirely different was most

likely the cause of Ms. Simpson's stroke. Plaintiffs have filed a motion for summary judgment dismissal of that affirmative defense because Defendant USA cannot meet its burden of proving that, either. *See MSJ on Affirmative Defenses.* [Doc. 93].

WHEREFORE, Plaintiffs pray for this Court's entry of an Order finding that as a matter of law, Defendant USA's conduct in stopping Plaintiff's oral anticoagulant without first testing for a Protein C Deficiency hypercoagulable state was negligent and was a cause of harm to her.

Respectfully submitted,

BENCOE & LACOUR LAW, PC

By */s/ Lori M.Bencoe*
    LORI M. BENCOE
    CHERIE L. LACOUR
    Attorneys for Plaintiffs
    9201 Montgomery Blvd., NE, Suite 404
    Albuquerque, NM 87111
    Phone: (505) 247-8800
    Email: Lori@bencoelaw.com
    Cherie@bencoelaw.com
    *Attorneys for Plaintiffs*

    Ted Barudin
    BARUDIN LAW FIRM, PC
    Attorneys for Plaintiffs
    7900 Menaul Blvd., NE
    Albuquerque, NM 87110-4606
    Phone: (505) 332-1800
    Email: tbarudin@barudinlaw.com
    *Co-counsel for Plaintiffs*

    Ronald I. Kaplan, MD, JD
    Kaplan & Lukowski, LLP
    Attorneys for Plaintiffs
    333 Sandy Springs Circle, Suite 200
    Atlanta, GA
    Phone: (404) 845-0012
    Email: rik@kaplanlegal.com
    *Co-counsel for Plaintiffs*

**CERTIFICATION OF FILING**

This is to certify that on September 22, 2020, Plaintiffs filed this *Motion For Summary Judgment* via CM/ECF and served it via electronic filing to:

Roberto D. Ortega
United States Attorney's Office
District of New Mexico
P.O. Box 607
Albuquerque NM 87103
(505) 346-7282

*/S/ Lori M. Bencoe*
Lori M. Bencoe